**In Re: Appeal from Decision of Monroe County Board of Assessment Appeals.**

**PINECREST LAKE COMMUNITY TRUST, by its Trustee, Brendon J.E. CARROLL**

v.

**MONROE COUNTY BOARD OF ASSESSMENT APPEALS and Pocono Mountain School District.**

**Appeal of: Monroe County Board of Assessment Appeals.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2012.
Decided Feb. 19, 2013.

Mark S. Love, Assistant County Solicitor, Tannersville, for appellant.

Geoffrey S. Worthington, Tannersville, for appellees Pinecrest Lake Community Trust and Brendon J.E. Carroll.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, we are asked to review a trial court's determination that a planned residential development's golf course is entitled to a "common or controlled facilities" tax exemption under Section 5105(b)(1) of the Uniformed Planned Community Act[1] (UPCA). The Monroe County Board of Assessment Appeals (Board) seeks review of an order of the Court of Common Pleas of Monroe County (trial court)[2] that sustained an appeal on behalf of the Pinecrest Lake Community Trust (Trust) from the Board's denial of the Trust's request for a tax exemption. We affirm, largely on the trial court's reasoning.

## I. Background

### A. Pinecrest Lake Community; Trust Agreement

The parties stipulated to the following facts. In the early 1980s, the Pinecrest Development Corporation (Developer) acquired a planned residential development (PRD) known as the Crestwood PRD, located on a 50–acre parcel in Tobyhanna Township, Monroe County. The property included a part of Pinecrest Lake. This acquisition was the beginning of Developer's planned community known as the Pinecrest Lake Community (Community). In 1984, Developer created the Pinecrest

---

1. 68 Pa.C.S. § 5105(b)(1).

2. The Honorable Arthur L. Zulick presided.

Lake Community Trust (Trust) and recorded the "Trust Agreement"[3] in the Monroe County Recorder of Deeds Office.

All deeded properties in the Community were conveyed subject to the Trust Agreement. The Trust Agreement contains various restrictions on the individual units, and it obligates unit owners to pay a basic Trust charge and additional charges as needed.[4] Currently, the Community has about 325 unit owners.

Pursuant to the Trust Agreement, the Trust acquired title to all common areas and facilities within the Community. The Trust's sole beneficiaries are the owners in the Community. The Trust Agreement initially named the First Eastern Bank, N.A., as trustee. Thereafter, from February 1988 to February 2002, Developer served as the sole trustee. In February 2002, an amendment to the Trust substituted Brendon J.E. Carroll (Trustee Carroll) as sole trustee. Trustee Carroll is empowered to manage, own, operate and maintain the common areas and common facilities for the benefit of the owners. He is also empowered to acquire additional property for use as common areas in the Community.

In 1998, Developer obtained Township approval for an addition to the Community. The addition included a new PRD known as the Pinecrest Lake PRD. The final site plan revised the Pinecrest Lake PRD to include an 18–hole golf course. Developer then subdivided the golf course parcels from the residential sites, leaving only the golf course on the golf course parcels. Also in 1998, Developer transferred the seven golf course parcels to a separate entity, the Wild Pines Golf Club, LLC.

## B. Assessment Appeal

After the golf course subdivision, the Monroe County Assessment Office (Assessment Office) assigned tax identification numbers to the seven golf course parcels. While owned by Wild Pines, the seven parcels were assessed and taxed as a golf course. In August 2011, the Trust acquired fee simple title to the golf course parcels from Wild Pines. Immediately thereafter, the Trust appealed the tax notices for the assessment years including 2011 and 2012. The Trust sought a change in use classification to "Class 6— Amenity" and an assessment reduction to zero to go into effect for the 2012 assessment year and thereafter.

The Board held a hearing in September 2011. In October 2011, the Board notified the Trust by letter that it denied the appeal and that the assessment for the property would remain unchanged from that set for the 2012 assessment year.

## C. Trial Court Determination

### 1. Trust's Appeal

■ The Trust appealed to the trial court on the grounds that the Board failed to adhere to the statutory mandate of the UPCA.[5] In particular, the Trust asserted the golf course is a "common or controlled facility" exempt from assessment and taxa-

3. *See* Joint Ex. C; Reproduced Record (R.R.) at 97a–119a.

4. Unit owners currently pay the following dues and assessments: trust dues, trust reserves, club dues, club reserves, optional tennis fees, optional golf memberships, repaint reserves and road fees. *See* Joint Stipulations at ¶ 37; R.R. at 38a–39a.

5. In a real estate tax assessment appeal, the trial court hears the matter *de novo* and makes its own determination based on the evidence presented. *Green v. Schuylkill Cnty. Bd. of Assessment Appeals*, 565 Pa. 185, 772 A.2d 419 (2001).

tion under Section 5105 of the UPCA (separate titles and taxation), which provides, in pertinent part:

> (a) **Title.**—Except as provided in subsection (b), each unit that has been created, together with the interests, benefits and burdens created by the declaration, including, without limitation, the rights to any common facilities, constitutes a separate parcel of real estate. The conveyance or encumbrance of a unit includes the transfer of all of the rights, title and interest of the owner of that unit in the common facilities regardless of whether the instrument affecting the conveyance or encumbrance so states.
>
> (b) **Taxation and assessment.**—If there is a unit owner other than a declarant, each unit must be separately taxed and assessed. The value of a unit shall include the value of that unit's appurtenant interest in the common facilities, excluding convertible or withdrawable real estate. The following shall apply:
>
> *(1) Except as provided in paragraph (2), no separate assessed value shall be attributed to and no separate tax shall be imposed against common facilities or controlled facilities.*[6]
>
> *(2) Convertible or withdrawable real estate shall be separately taxed and assessed until the expiration of the period during which conversion or withdrawal may occur.*

68 Pa.C.S. § 5105(a), (b) (emphasis and footnote added). The Trust sought a decision that the Board erred in assessing the golf course parcels, and that the Trust is entitled to a tax exemption for the golf course parcels as common facilities under 68 Pa.C.S. § 5105(b). *See* Reproduced Record (R.R.) at 3a–8a.

### 2. Trial Court Opinion

In its opinion, the trial court noted, the parties agreed that the only issue before the court was whether the golf course parcels were exempt from separate taxation under 68 Pa.C.S. § 5105(b)(1) as a "common element"[7] of the Community. "Put another way, *the sole issue before the court is one of statutory construction— whether the UPCA applies to Pinecrest Lake Community and, if so, whether the provisions of the Act provide that the golf course parcels are common elements which are exempt from separate taxation.*" Tr. Ct., Slip. Op., 4/13/12, at 2 (emphasis added).

The UPCA, the trial court observed, became effective in February 1997. It is applicable, generally, to planned communities created *after* its effective date. 68 Pa.C.S. § 5102(a). In addition, certain provisions of the UPCA retroactively apply to all planned communities created *before* the UPCA's effective date. *See* 68 Pa.C.S. §§ 5102(b) and (b.1). However, those subsections apply only with respect to events or circumstances occurring after the UPCA's effective date "*and do not invalidate specific provisions contained in existing provisions of the declaration, by laws or plats and plans of those planned communities.*" *Id.* (emphasis added).

---

6. The UPCA defines "**Common facilities**" as: "Any real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit." 68 Pa.C.S. § 5103. The statute defines "**Controlled facilities**" as: "Any real estate within a planned community, whether or not a part of a unit, that is not a common facility but is maintained, improved, repaired, replaced, regulated, managed, insured, or controlled by the association." *Id.*

7. The UPCA defines "**Common elements**" as: "Common facilities or controlled facilities." 68 Pa.C.S. § 5103.

In determining whether the UPCA applied here, the trial court noted the Act defines a **"planned community"** as:

Real estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement, or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person. . . .

68 Pa.C.S. § 5103.

The trial court found the Community qualifies as a planned community under the UPCA. The deeds to the individual units have all been conveyed subject to the Trust Agreement. The Trust Agreement contains various restrictions on the units and obligates the individual unit owners to pay basic Trust charges and additional charges representing the unit owner's *pro rata* share of keeping and maintaining the common areas and facilities. The Trust Agreement defines *"Common Areas and Facilities"* as "All of the land in Pinecrest Lake, and improvements thereon, not designated 'Houses'. . . ." R.R. at 99a. Pursuant to the Trust Agreement, title to the common areas and facilities is transferred to the Trustee, for the use and enjoyment of the owners. *Id.*

The trial court rejected the Board's argument that the UPCA is inapplicable because the Community predated the Act, and because Developer never filed a decla-

ration as required by Section 5201 of the UPCA, 68 Pa.C.S. § 5201 (creation of a planned community).[8]

The trial court also rejected the Board's argument that the golf course could not be considered a common facility under the UPCA because the Trust is not an association as defined in the Act. The UPCA defines **"Association"** or **"UNIT OWNERS' association"** as: "The unit owners' association organized under section 5301 (relating to organization of unit owners' association)." 68 Pa.C.S. § 5103.

Section 5301 of the UPCA provides:

A unit owners' association shall be organized no later than the date the first unit in the planned community is conveyed to a person other than a successor declarant. The membership of the association at all times shall consist exclusively of all the unit owners. . . . The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.

68 Pa.C.S. § 5301.

The trial court recognized the Community's unit owners are not members of a unit owners' association. Nevertheless, the unit owners are the sole beneficiaries of the Trust, which owns the common areas. Even though the Trust does not have voting members, the trial court determined the Trust serves the function of an association for purposes of common or controlled facilities. The trustee is responsible for creating and maintaining common areas and facilities.

---

**8.** The court noted the UPCA did not make the mandatory filing of a declaration retroactive. Therefore, a planned community that predates the UPCA may meet the statutory definition regardless of whether it filed a declaration. Tr. Ct., Slip Op., at 6. Even assuming the declaration provision of the UPCA applied

retroactively, the trial court reasoned that the Trust Agreement, recorded in 1984, would meet the UPCA's definition of "Declaration": "Any instrument, however denominated, that creates a planned community and any amendment to that instrument." 68 Pa.C.S. § 5103.

Moreover, the Trust Agreement defines *"Beneficiary"* or *"Beneficiaries"* of the Trust as:

> Any person or entity who or which is Owner of a building, dwelling unit, or Lessees, licensee or permittee thereof, and their immediate families residing with them in the household, in Crestwoods or in any other Section of Pinecrest Lake or any extension or addition thereof, specifically made subject to the terms hereof by an instrument accepted by the Trustee and recorded in the Office of the Recorder of Deeds in and for Monroe County ... but only while such person or entity so remains an Owner or Lessee and not thereafter.

R.R. at 99a. Although the unit owners are not voting members of an owners' association, the trial court noted they may enforce the trustee's fiduciary obligations to them as beneficiaries of the Trust.

The trial court further observed the UPCA was derived from the uniform act drafted by the National Conference of Commissioners on Uniform State Laws (Uniform Law Commissioners). The Uniform Law Commissioners stated in part (with emphasis added):

> *These common-law homeowner association regimes take many forms. They* include not only planned residential developments, which follow the classic model described in the Homes Association Handbook promulgated in 1962 by the Urban Land Institute and which inspire FHA Form 1400, but also various forms of cooperative ownership—some based on corporate forms, some real estate, *some trust, and many other combinations of real and personal property ownership.*

*Uniform Law Comment* preceding 68 Pa. C.S.A. § 5101.

Additionally, in addressing the issue of whether the UPCA applies to pre-existing planned communities as well as new ones, the Uniform Law Commissioners stated (with emphasis added):

> Two conflicting policies are proposed when considering the applicability of this Act to 'old' and 'new' planned communities located in the enacting state. *On the one hand, it is desirable, for reasons of uniformity, for the Act to apply to all planned communities located in a particular state, regardless of whether the planned community was created before or after adoption of the Act in that state.* No state has previously enacted comprehensive legislation dealing with planned communities. Adoption of this Act, which (among other things) places requirements on developers and unit owners' associations, may tend to develop different markets for planned communities created before and after adoption of the Act. In addition, to the extent that 'old' planned communities are governed only by common law while 'new' planned communities are governed by the additional provisions of this Act, confusion may result in the minds of both lenders and consumers.
>
> *On the other hand, to make all provisions of this Act automatically apply to 'old' planned communities might violate the constitutional prohibition of impairment of contracts.* In addition, aside from the constitutional issue, automatic applicability of the entire Act almost certainly would unduly alter the legitimate expectations of some present unit owners and declarants.
>
> *Accordingly, the philosophy of this section reflects a desire to maximize the uniform applicability of the Act to all planned communities in the enacting state, while avoiding the difficulties raised by automatic application of the entire Act to pre-existing planned communities.*

68 Pa.C.S.A. § 5102 *Uniform Law Comment.*

Here, the trial court noted, Developer established the Community by recording the Trust Agreement more than 12 years prior to the enactment of the UPCA. At the time of the Community's creation, the unit owners' interests in the common areas were protected by the Trust Agreement. Although the democratic structure of a unit owners' association is not present, in all other respects the Trust serves the purpose of an association in protecting the unit owners' interest in the common elements. *See* Tr. Ct., Slip Op., at 9–10. Therefore, the trial court concluded, the Trust carries out the function of an association as contemplated by the UPCA. *Id.* at 10.

 The trial court also found the Trust owns the golf course for the sole benefit of the owners. Thus, the court concluded the golf course parcels meet the Act's definition of a "common facility." Consequently, the trial court found the golf course parcels are exempt from separate taxation pursuant to 68 Pa.C.S. § 5105(b)(1). The Board appeals.[9]

## II. Issues

The Board presents three primary issues. First, the Community's golf course, acquired in 2011, may be separately assessed for real estate taxation where the Trust, in acquiring the facility on behalf of the property owners, does not meet the UPCA's requirement for a unit owners' association. Second, the golf course is disqualified from an exemption from separate taxation because it is convertible or withdrawable real estate under the UPCA.

Third, a private golf course is properly subject to real estate assessment and taxation where memberships may be purchased by outside individuals who do not own units within the planned community, where the Trust's employees are offered limited golf privileges as part of their compensation, and where unit members who wish to play pay extra fees over and above their base Trust fee and are allowed to bring guests.

## III. Discussion

### A. Unit Owners' Association

#### 1. Argument

The Board contends the Community's golf course, acquired in 2011, can be separately assessed for real estate taxation. This is because the Trust does not qualify as a unit owners' association under the UPCA. To that end, the Board argues, in order to qualify as common facility or controlled facility, it must be owned, leased or controlled by a unit owners' association organized under 68 Pa.C.S. § 5301. Pursuant to Section 5301, the *"membership of an association at all times shall consist exclusively of all unit owners ...* [and] shall be organized as a profit or nonprofit corporation or as an unincorporated association." *Id.* (emphasis added).

Thus, because the Trust does not meet the organizational requirements, the trial court erred in holding the Trust functions as an association for purposes of the UPCA. The Board asserts that although a trust may own a unit and vote through its trustee as a member of a unit owners' association, *see* 68 Pa.C.S. § 5310, a proper interpretation of 68 Pa.C.S. §§ 5301 and

9. Appellate review in tax assessment matters is limited to determining whether the trial court committed an error of law, abused its discretion or reached a decision unsupported by substantial evidence. *Green v. Schuylkill*

*Cnty.* While the weight of the evidence is before the appellate court for review, the trial court's findings are entitled to deference and will be reversed only for clear error. *Id.*

5310 leads to a conclusion that a trust cannot be organized as a unit owners' association.

The Board further stresses that the Trust is operated by a sole trustee. None of the 325 unit owners have voting rights, unless it involves an amendment to the Trust. This is inconsistent with UPCA, which provides significant safeguards for unit owners in the operation of the association.

In addition, Trustee Carroll is the son of a principal of the original developer or declarant. *See* Notes of Testimony (N.T.) at 21; R.R. at 70a. The Board contends this constitutes a violation of 68 Pa.C.S. § 5303(c), which mandates a limited period of declarant control of association.

The Board also cites this Court's decision in *Rybarchyk v. Pocono Summit Lake Property Owners Association*, 49 A.3d 31 (Pa.Cmwlth.2012). In that case we held in part that a voluntary homeowners' association, which did not predate the conveyance of the first unit in the subdivision and did not include all unit owners, failed to qualify as an association under the UPCA. As a result, we determined the subdivision did not qualify as a planned community. Therefore, the residents who were not part of the homeowners' association were not obligated to pay maintenance assessments for a lake area and pavilion owned by the association.

In response, the Trust contends the trial court properly determined the golf course parcels meet the UPCA's definition of "**Common facilities:**"

Any real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit.

68 Pa.C.S. § 5103. The parties do not dispute that the golf course parcels are not *units* subject to separate ownership.

Therefore, the trial court needed only to determine whether the parcels were within a planned community and owned by an association. On appeal, the Board does not challenge the trial court's determination that the Community is a planned community under the UPCA.

Turning to the association requirement, the Trust recognizes the UPCA defines an association as a unit owners' association organized under 68 Pa.C.S. § 5301. Section 5301, in turn, requires an association to be organized as a profit or nonprofit corporation, or as an unincorporated association.

However, the Trust asserts, the UPCA became effective in 1997, more than 12 years after the creation of the Trust. Therefore, the question of whether the Trust qualifies as an association involves the following two-step analysis: (1) the extent to which the Trust satisfies the plain language of 68 Pa.C.S. § 5301; and (2) in the event the Trust does not satisfy the plain language of the statute, the extent to which the UPCA retroactively negates such a pre-existing form of governance.

First, the Trust contends it meets the plain language of 68 Pa.C.S. § 5301, which permits an association to be structured as an unincorporated association. Section 102 of the Associations Code defines "**Association**" in part as "a business trust." 15 Pa.C.S. § 102. Prior to the codification of the Associations Code, business trusts were recognized at common law. *See Pa. Co. for Insurances on Lives and Granting Annuities v. Wallace*, 346 Pa. 532, 31 A.2d 71 (1943). Here, the Community's 325 unit owners are the sole beneficiaries of the Trust, which owns the common areas and facilities. Therefore, at the time of the enactment of the UPCA, the Trust qualified as a pre-existing unincorporated

association, a business trust, in accord with the plain language of 68 Pa.C.S. § 5301.

Even assuming the Trust does not satisfy the plain language of 68 Pa.C.S. § 5301 because it does not have: an executive board or officers (68 Pa.C.S. § 5303), by-laws (68 Pa.C.S. § 5306), meetings (68 Pa.C.S. § 5308) or unit owners' voting rights (68 Pa.C.S. § 5310), the Trust asserts the drafters of the UPCA did not intend these provisions to retroactively prohibit a pre-existing business trust from continuing to govern a planned community.

Further, the Trust argues, although Trustee Carroll is a biological son of the principal of Developer, the corporate declarant for purposes of the UPCA, this does not violate the limitation on declarant control in 68 Pa.C.S. § 5303(c). This is because any period of declarant control expired years ago prior to acquisition of the golf course.

The Trust also urges that non-retroactivity of the UPCA provisions applies to organizational requirements in 68 Pa.C.S. § 5301. Therefore, the organizational structure of the Trust Agreement would not preclude the Trust from governing the Community under the UPCA. As indicated by the *Uniform Law Comment* cited by the trial court, the Uniform Law Commissioners recognized that making the entire UPCA retroactive to all pre-existing planned communities would likely violate the constitutional provisions against impairment of contracts and would improperly alter the legitimate expectations of some present unit owners and declarants. Therefore, the Trust urges, the "old law" remains applicable to preexisting planned communities where not automatically displaced by the expressly retroactive provisions specified in 68 Pa.C.S. § 5102.

### 2. Analysis

■ Initially, we recognize the Community's unit owners are not voting members of a unit owners' association. As such, the Trust fails to meet this organizational requirement of 68 Pa.C.S. § 5301.

However, Developer recorded the Trust Agreement and created this planned community in 1984, more than 12 years prior to the 1997 enactment of the UPCA. All unit owners are subject to the Trust Agreement, and they are the sole beneficiaries of the Trust. Although the Trust does not provide the unit owners with democratic decision-making authority, the Trust performs all the essential protective functions of an owners' association.

When interpreting a statute, a court may rely on the comments or report of a commission, committee, association or other entity which drafted a statute, if such comments or report were published or otherwise generally available prior to consideration of the statute by the General Assembly. 1 Pa.C.S. § 1939. In drafting the UPCA, the Uniform Law Commissioners stated the comprehensive statute, which closely parallels the Uniform Condominium Act, is intended to provide "the same consumer protection, regulatory structure and administrative benefits to unit owners in most multi-owner developments, *regardless of how title to the common elements has been treated." Uniform Law Comment* preceding 68 Pa.C.S.A. § 5101 (emphasis added).

Here, all units are owned subject to the terms of the Trust Agreement. Unit owners pay regular fees and assessments for the maintenance of the common areas and facilities. Further, the unit owners are the *sole beneficiaries* of the Trust, which owns and maintains the common areas exclusively for their benefit. Consequently, Trustee owes an enforceable fiduciary duty to the unit owners. *See, e.g., In re Noonan's Estate*, 361 Pa. 26, 63 A.2d 80 (1949) (trustee, as a fiduciary, owes each trust

beneficiary a basic duty of loyalty; a beneficiary has standing to sue for a breach of this duty).

In addition, 68 Pa.C.S. §§ 5102(b) and (b)(1), provide for a limited retroactive application of certain provisions of the UPCA. Those sections, however, do not include 68 Pa.C.S. § 5301 (organization of unit owners' association) as a retroactive provision. As the drafters of the UPCA recognized, common law homeowners' association regimes may take many forms, including *trusts* and *many other combinations of real and personal property ownership. See Uniform Law Comment* preceding 68 Pa.C.S.A. § 5101; Tr. Ct., Slip. Op., at 9. Thus, the drafters correctly reasoned that the application of certain organizational requirements of the UPCA to pre-existing planned communities could violate the constitutional prohibition against impairment of contracts and lead to confusion among unit owners and declarants. *See* 68 Pa.C.S.A. § 5102 *Uniform Law Comment;* Tr. Ct., Slip. Op., at 9.

Nonetheless, the Board contends that 68 Pa.C.S. § 5102(b.1)(2) expressly makes 68 Pa.C.S. § 5303(c), relating to time limitations on a declarant's control of an association's executive board, retroactive to pre-existing planned communities. Here, the Board points out, Trustee Carroll is the son of the principal of Developer, the declarant corporation. *See* N.T. at 21; R.R. at 70a. The Board contends this constitutes a violation of 68 Pa.C.S. § 5303(c), which mandates a limited period of declarant control of the association's executive board.

We disagree. The 1984 Trust Agreement, which predated the UPCA by more than 12 years, does not provide for a democratically governed unit owners' association with an executive board. Rather, it provides for a Trust with the unit owners as the sole beneficiaries. Specifically, sub-

section 5102(b.1)(2) of the UPCA states, "Section 5303(c) and (d) ... do not invalidate specific provisions contained in existing provisions of the declaration...." 68 Pa.C.S. § 5102(b.1)(2). Consequently, Section 5303(c) cannot invalidate the organizational structure of the Trust Agreement.

■ Also, Trustee Carroll's biological relationship to the principal of the declarant corporation does not establish declarant control of the Trust. Moreover, it does not affect Trustee Carroll's obligations to maintain the common areas and facilities exclusively for the unit owners' benefit. A trustee owes the beneficiaries a duty not to be guided by any third person's interest in administering a trust. *Noonan's Estate.*

In addition, we reject the Board's assertion that this Court's recent decision in *Rybarchyk* supports its argument. *Rybarchyk* merely held that subdivision property owners who were not members of a voluntary homeowners' association were not obligated to pay maintenance assessments to an association which was organized after the first deeds were conveyed and which does not include all property owners. In short, the owners' association in *Rybarchyk* did not meet the requirements for an association as defined by the UPCA. For this and other reasons, the subdivision in *Rybarchyk* did not qualify as a planned community under the UPCA.

*Rybarchyk* is thus distinguishable from the present case where *all* unit owners are subject to the Trust Agreement, which predated the conveyance of the first unit in the Community. Further, at all times here, the Community unit owners were the sole beneficiaries of the Trust.

For these reasons, we are persuaded that the Trust performs the essential protective functions of an owners' association

with regard to the ownership of the Community's "common facilities" or "controlled facilities" for purposes of the UPCA. Therefore, we hold the trial court properly determined the golf course parcels meet the UPCA's definition of "common facilities" and were exempt from separate taxation under 68 Pa.C.S. § 5105(b)(1).

### B. Convertible or Withdrawable Real Estate

#### 1. Argument

The Board next contends the Community's golf course, acquired in 2011, is disqualified from the protection of 68 Pa.C.S. § 5105(b)(1) because it is convertible or withdrawable real estate [10] subject to separate assessment and taxation under 68 Pa. C.S. § 5105(b)(2). This provision states, "Convertible or withdrawable real estate shall be separately taxed and assessed until the expiration of the period during which conversion or withdrawal may occur."

The Board asserts the 1998 subdivision plans creating the golf course did not contain any specific prohibition against the future sale or use of the golf course parcels as residential lots. Further, the 2011 deed of conveyance of the golf course parcels to the Trust does not contain any language either requiring the Trust to hold the golf course parcels as a common area or precluding the Trust from converting the parcels to residential lots, or selling the golf course.

#### 2. Analysis

In *E.L.C.A. Development Corp. v. Lackawanna County Board of Assessment Appeals*, 752 A.2d 466 (Pa.Cmwlth.2000),

this Court rejected a similar argument. In *E.L.C.A.*, the taxing authorities argued that six parcels conveyed to the community association and maintained by the association as common areas were "convertible" or "withdrawable" real estate because they could at any time be sold or annexed and used to create additional units.

In rejecting this argument in *E.L.C.A.*, we reasoned, "[t]he fact that the Community Association members could at some time in the future vote to sell common area real estate, however unlikely, does not mean that such real estate is convertible or withdrawable." *Id.* at 469. We further explained:

> In our view, the classification of convertible and withdrawable real estate cannot apply to real estate that has been converted to common area by conveyance to the Community Association or to real estate owned by the Development Corporation, but maintained, improved and insured by the Community Association and made available for the common use of the members.... If in the future any parcel is sold or developed with additional units and/or limited common or controlled facilities, the County may at that time separately assess and tax it.

*Id.* at 469–70.

*E.L.C.A.* is applicable here. The Trust, not Developer, owns the golf course. The Trust owns and maintains the golf course as a common facility for the use and benefit of the owners.

Further, we agree with the Trust's interpretation of the terms "convertible" and "withdrawable" real estate as applying to a declarant's rights reserved in the declara-

---

10. The UPCA defines **"Convertible real estate"** as "A portion of a flexible planned community not within a building containing a unit, within which additional units, limited common facilities or any combination thereof may be created." 68 Pa.C.S. § 5103. It defines **"Withdrawable real estate"** as "Real estate that may be withdrawn from a flexible planned community." *Id.*

tion. *See* 68 Pa.C.S. § 5206 (relating to contents of declaration for flexible planned communities). A declarant may explicitly reserve the option to create units within convertible real estate, to add additional real estate or withdraw "withdrawable" real estate. 68 Pa.C.S. § 5206(1). Such options are limited to a seven-year period. 68 Pa.C.S. § 5206(2).

The provisions of 68 Pa.C.S. § 5206 are inapplicable here. The Trust owns the golf course in fee simple as a common area for the benefit of the owners. Developer, as declarant, reserved no special right to develop it as convertible real estate. Consequently, the separate assessment and taxation provisions of 68 Pa.C.S. § 5105(b)(2) do not apply. *E.L.C.A.*

### C. Common Facilities Exemption

#### 1. Argument

In its final argument, the Board contends the golf course is properly subject to real estate assessment and taxation because memberships may be purchased by outside individuals who do not own units within the planned community, because the Trust's employees are offered limited golf privileges as part of their compensation, and because unit owner members who wish to play pay extra fees over and above their base fees and are allowed to bring guests.

More specifically, the Board asserts the after-acquired golf course remains taxable under the pre-UPCA cases of *County of Monroe v. Pinecrest Development Corp.,* 98 Pa.Cmwlth. 200, 510 A.2d 1274 (1986) and *Timber Trails Community Association v. County of Monroe,* 150 Pa.Cmwlth. 29, 614 A.2d 342 (1992). Pursuant to these cases, common areas in recreational developments are subject to being separately assessed and taxed on a case by case basis. A common area may have zero or nominal value where no buyer would be willing to

purchase it subject to the owners' restrictive easements. For these common areas, an owners' association could seek "Class 6—Amenity Status" from the Board, thereby reducing the taxes on the common areas to zero.

On the other hand, the common areas may have a value greater than the sum of the owners' easement rights if the owners release or modify their easement rights, or if they extend privileges to individuals who are not property owners. In *Timber Trails,* this Court recognized that approximately 25 people outside the community held memberships, employees were extended membership privileges as part of their compensation, a small number of community volunteers (including fire, police and ambulance crews) were given memberships, and guests of members were allowed to play a number of times each year. Given these facts, this Court determined the golf course had an actual market value greater than zero and was thus taxable.

The Board argues the same circumstances are present here and that the parties agree that if the UPCA does not apply, the golf course should remain taxable at its current valuation.

In response, the Trust asserts that the UPCA is applicable and that the Supreme Court's decision in *Saw Creek Community Association, Inc. v. County of Pike,* 581 Pa. 436, 866 A.2d 260 (2005), is controlling. In *Saw Creek,* the Supreme Court held a restaurant located within a planned community on property owned by the association, but leased to a third party and open to the general public, constituted a tax exempt "common facility" of the community.

The Trust also points out that the Board previously stipulated in another case that a golf course was a common facility for the

exclusive use of fee-paying residents even though about 25 individuals from outside the planned community held memberships, and employees and members' guests had golf privileges. *See The Lake Naomi Club, Inc. v. Monroe Cnty. Bd. of Assessment Appeals,* 782 A.2d 1121 (Pa.Cmwlth. 2001). In particular, the Board stipulated the golf course met the UPCA's definition of "controlled facilities" and "common facilities." *Id.* at 1123. The Board further stipulated the golf course was neither "convertible real estate" nor "withdrawable real estate" as defined by the UPCA. *Id.*

## 2. Analysis

■ The Supreme Court's majority opinion in *Saw Creek* is controlling here. In *Saw Creek,* the Court determined a restaurant and sales office were clearly common facilities of the planned community, based on the plain and unambiguous definition of "common facilities" in section 68 Pa.C.S. § 5103. Turning to that statutory definition, the court explained that property qualifies if it meets the following two requirements: (1) it is within the planned community; and (2) it is owned or leased by or leased to the homeowners' association. The Supreme Court further reasoned:

> Contrary to Appellants' assertion, however, homeowners do not have an appurtenant interest in common facilities only if they have the right to free and unfettered access to those facilities; rather, the Act makes clear that regardless of the quality of access afforded to them, homeowners' have an appurtenant interest in any facility that the planned com-

munity declaration designates as a 'common facility,'....

* * *

Thus, we conclude that the Commonwealth Court properly determined that the restaurant and sales office are common facilities and are thereby exempt from separate assessment and taxation pursuant to section 5105(b)(1) of the Act. Moreover, we hold that the Saw Creek homeowners retained appurtenant interests in the restaurant and sales office even though the association leased those facilities to private parties and did not keep them open for the homeowners' free and unfettered use.

*Saw Creek,* 581 Pa. at 445–46, 866 A.2d at 265–66.

Applying the rationale of the majority opinion in *Saw Creek* to the facts here, we agree that the golf course parcels owned by the Trust are "common facilities" exempt from separate taxation pursuant to 68 Pa.C.S. § 5105(b)(1), regardless of whether individuals other than Community units owners had golf course memberships or privileges.

## IV. Conclusion

For the above reasons, we discern no error or abuse of discretion on the part of the trial court. Accordingly, we affirm.

## ORDER

**AND NOW,** this 19th day of February, 2013, the order of the Court of Common Pleas of Monroe County is **AFFIRMED.**