LITTLE MOUNTAIN COMMUNITY
ASSOCIATION, INC. and Donald
R. Rhodes, Appellee

v.

The SOUTHERN COLUMBIA
CORP., Appellant.

Superior Court of Pennsylvania.

Argued Jan. 29, 2014.
Filed May 1, 2014.
Reargument Denied July 8, 2014.

Paul J. Toner, Philadelphia, for appellant.

John A. Mihalik, Bloomsburg, for appellees.

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.*

OPINION BY PLATT, J.

Appellant, The Southern Columbia Corp. (Southern Columbia), appeals by permission from the order overruling four of its five preliminary objections to the complaint of Appellees, Little Mountain Community Association, Inc. and Donald R. Rhodes.[1] Appellees chiefly seek to re-

---

* Retired Senior Judge assigned to the Superior Court.

1. By order dated January 22, 2013 (filed January 23, 2013), the trial court "revised and

place Southern Columbia in ownership and operation of roads and another common facility[2] for Mystic Mountain Estates, with Little Mountain, as a mandatory unit owners' association under the Uniform Planned Community Act (also referred to as UPCA, or the Act).[3] We are constrained to conclude that the trial court, in overruling the first preliminary objection, and in its overarching analysis, misinterpreted the retroactivity provisions of the UPCA. Accordingly, we vacate in part and remand.

There is no substantial dispute about the facts directly relevant to our review.[4] The parties stipulated to most of them in an extended colloquy at the hearing held on December 4, 2012. (*See* N.T. Hearing,

12/04/12, at 8–19; *see also* Appellant's Brief, at 6 (stating "dispositive facts were not in dispute"); Appellees' Brief, at 2 (noting stipulation at hearing, while also referring to allegations from complaint)).

Appellant Southern Columbia is the successor developer and declarant of Mystic Mountain Estates, a residential subdivision in Columbia County begun in 1972, with the first lot sold in 1974.[5] (*See* Trial Ct. Op., 12/28/12 at 1). Mystic Mountain Estates is comprised of 423 lots,[6] of which 224 have been sold. Little Mountain is a self-proclaimed community association. (*See* Complaint, 9/27/12, at –12 ¶¶ 1–4; 8 ¶ 46). Mr. Rhodes, a half-time resident at Mystic Mountain Estates with a fifty percent beneficial interest in three lots by virtue of a living trust, is Little Mountain's treasurer.[7]

amended" its order of December 28, 2012 to permit an interlocutory appeal. (Order, 1/23/13). On March 4, 2013, the Commonwealth Court, to which Appellant originally appealed, sustained an objection to jurisdiction and transferred the instant case to this Court, as outside of the scope of 42 Pa.C.S.A. § 762(a)(5) (vesting jurisdiction over matters involving not-for-profit corporations in the Commonwealth Court). (*See* Order, 3/05/13). On May 1, 2013, this Court, *per curiam*, granted Appellant's petition for permission to appeal, as an appeal from the order of December 28, 2012. (*See* Order, 5/01/13).

2. Apparently the only other entity at issue besides roadways is a storm water treatment facility. (*See* Trial Court Opinion, 12/28/12, at 3).

3. The Uniform Planned Community Act, 68 Pa.C.S.A. §§ 5101–5414, was enacted December 19, 1996 as P.L. 1336, No. 180, § 1, effective in forty-five days. Besides Pennsylvania, the Act was adopted in North Carolina. *See* 68 Pa.C.S.A. § 5101, Uniform Law Comment. For a general background and analysis of the Act, *see* Jan Z. Krasnowiecki, *The Pennsylvania Uniform Planned Community Act*, 106 Dick. L.Rev. 463 (Winter 2002). Subsequent to the promulgation of the UPCA, the National Conference of Commissioners on Uniform State Laws which drafted the model Uniform Planned Community Act, consolidated it with The Uniform Condominium Act, and the Model Real Estate Cooperative Act,

into the Uniform Common Interest Ownership Act ("UCIOA"), 7 U.L.A. 471. *See id.* at 521.

4. However, Appellant does dispute several of the allegations in the complaint, notably, the purported defective maintenance of the community roadways. (*See, e.g.*, Appellant's Brief, at 7 n.2).

5. There is no dispute that Southern Columbia is the successor in interest to one "Joe Frame," not otherwise identified. (*See* N.T. Hearing, 12/04/12, at 14). Mr. Frame is not a party to this litigation, and there is no issue in this appeal involving his preceding interest.

6. The trial court erroneously refers to 432 lots. (*See* Trial Ct. Op., 12/28/12, at 2). The court apparently transposed the numerals. (*See* N.T. Hearing, at 14; *see also* Plaintiffs' Response to Defendant's Preliminary Objections, ¶ 10).

7. Mr. Rhodes spends the other half of his time in Florida. (*See* N.T. Hearing, at 36). He is also occasionally identified in the record as Little Mountain's secretary. The exact nature of his various offices is never spelled out. Nevertheless, it is apparent from the totality of his testimony that he is the guiding spirit in the formation of Little Mountain and in the prosecution of this suit. (*See id.* at 40–43, 48–56).

Little Mountain does not have an ownership interest in any of the lots.

The warranty deed for each purchaser of a lot at Mystic Mountain included thirteen restrictive covenants otherwise referred to as "Real Estate Development, Construction & Management Restrictions" (Restrictions). (*See* "Defendant's Preliminary Objections to Plaintiffs' Complaint," 10/18/12, at Exhibit 2). Each warranty deed, including the Restrictions, was recorded. In pertinent part, the Restrictions provided that Appellant Southern Columbia would assess various fees on an annual basis for maintenance and snow removal on community roadways. Each Grantee (Buyer) agreed to the "conditions and charges which shall be required to maintain those necessary community services[.]" (*Id.* at unnumbered pages 2–3 ¶ 8). The Restrictions were designated "covenants running with the land[.]" (*Id.* at unnumbered page 3 ¶ 10).

The Restrictions made provision for a permissive assignment, ("may at any time be assigned"), by Appellant Southern Columbia of its "rights and obligations" to a "three-member governing commission" elected on a "one-lot, one-vote basis" "when The Southern Columbia Corp. no longer owns a majority of the total number of lots in or planned for the Mystic Mountain Estates subdivision[.]" (*Id.* at unnumbered page 4 ¶ 13). There was no other procedure designated for a transfer, voluntary or compulsory, of the maintenance services or the corresponding assessments.

Little Mountain was incorporated in 2011. On September 27, 2012, Appellees Little Mountain and Mr. Rhodes filed a complaint against Appellant Southern Columbia. The complaint alleged, *inter alia,* defective maintenance of the roadways, and that there was no capital reserve account set aside by Appellant for future contingent expenses; it demanded an accounting of the fees collected, and sought a transfer of title ownership of the common facilities to itself. Chiefly, Appellees claimed a right to relief under the Uniform Planned Community Act, (*see* Complaint, at 11–12 ¶ 66; 13 ¶ 70; 16–17 ¶¶ 99–103), and the Restatement (Third) Property (Servitudes), (*see id.* at 10, ¶¶ 62–65; 17–19 ¶¶ 104–26). The complaint also cited various legal theories.[8]

Appellant filed preliminary objections. Briefly summarized, the first four objections challenged the standing of both Appellees to bring suit under the UPCA, demurred to the complaint as legally insufficient, and claimed failure to join all lot owners as necessary parties. (*See* Defendant's Preliminary Objections to Plaintiffs' Complaint, 10/17/12, at 4–11 ¶¶ 25–66). Specifically, Appellant first objected to Little Mountain's standing as a "Homeowners Association" under section 6.3 of Restatement (Third) Property (Servitudes), and under the UPCA. (Preliminary Objections, at 4–7). Secondly, Appellant objected that the complaint was legally insufficient under Pa.R.C.P. 1028(a)(4). (*See id.* at 7–8). Third, Appellant objected that Mr. Rhodes lacks standing because he was not the title owner of the units by which he claimed beneficial interest. (*See id.* at 8–10). Fourth, Appellant objected to Appellees' failure to join all necessary parties, under Pa.R.C.P. 1028(a)(5). (*See id.* at 10–11). The last preliminary objection challenged Appellees' claim to attorneys' fees. (*See id.* at 11–12).

The trial court held a hearing on December 4, 2012. After the hearing and argument, the trial court overruled the first four preliminary objections and sustained the fifth one, the objection to attorneys'

---

8. Specifically, the complaint alleged breach of fiduciary duty, (*see* Complaint, at 15 ¶¶ 88–94), breach of promoter's duty, (*see id.* at 16 ¶¶ 95–98), implied contract, (*see id.* at 19 ¶¶ 127–34), and detrimental reliance, (*see id.* at 20 ¶¶ 135–45).

fees.[9] (*See* Order, 12/28/12, at 1–2). Appellant filed a combined motion for reconsideration and request to certify the case for interlocutory appeal, on January 8, 2013. As already noted, on January 22, 2013, the court signed an order certifying its prior order for interlocutory appeal. (*See* Order, 1/23/13). This timely appeal followed.[10]

Appellant presents one question for our review:

> I. Whether the trial court committed an error of law when it concluded that the UPCA can be "retroactively" applied to a "pre-UPCA" planned community in conflict with existing common deed covenants so that a planned community organized before the enactment of the UPCA can be forcibly reorganized into a planned community controlled by a newly formed unit owners association controlled by a minority of lot owners?

(Appellant's Brief, at 4) (quotation marks in original).

▪ Appellant argues that the trial court's conclusion that the Uniform Planned Community Act can be applied retroactively to the facts and issues in this case conflicts with the plain language of the Act. (*See id.* at 12, 13–19). We agree.

▪ Our standard of review is well-settled.

> As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

*Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004) (citations and internal quotation marks omitted). *Accord, Friedman v. Corbett,* 620 Pa. 569, 72 A.3d 255, 257 n. 2 (2013). Furthermore,

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.... Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exch.,* 74 A.3d 157, 162 (Pa.Super.2013) (citation omitted).

▪ Appellant's issue involves the interpretation of a statute. The "application of a statute is a question of law, and our standard of review is plenary." *Bell v. Dean,* 5 A.3d 266, 269 (Pa.Super.2010) (citation omitted). In the interpretation of a statute,

> [W]e are guided by the principles set forth in the Statutory Construction Act

---

**9.** The part of the order sustaining the fifth preliminary objection is not at issue in this appeal. (*See* Appellees' Brief, at 1).

**10.** Appellant filed a statement of errors on May 10, 2013. *See* Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) opinion on May 16, 2013, incorporating by reference its opinion and order of December 28, 2012. *See* Pa.R.A.P. 1925(a).

of 1972, 1 Pa.C.S. §§ 1501–1991. Accordingly, we begin with the precept that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

Generally, the best indication of legislative intent is the statute's plain language. We look to the language of the statute, which, if plain and clear, we simply apply; we may not disregard a statute's plain language in order to pursue the statute's spirit. 1 Pa.C.S. § 1921(b). However, our review also must take into account the precepts that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable, and that the General Assembly intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1), (2).

Where words of a statute are not explicit, but ambiguous, a reviewing court engages in a statutory construction analysis that considers "among other matters:"

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

*Phoenixville Hosp. v. Workers' Compensation Appeal Bd. (Shoap)*, —— Pa. ——, 81 A.3d 830, 840 (2013) (case citations and footnote omitted). Additionally, "**[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.**" 1 Pa. C.S.A. § 1926 (emphasis added).

Here, under our plenary standard of review, we are constrained to conclude that the trial court's reasoning in support of its retroactive application of certain sections of the Uniform Planned Community Act, misconstrues the applicable legal principles of statutory interpretation. Section 5102 of the Act sets forth an extensive list of provisions which are expressly made retroactive.[11] The trial court candidly con-

---

**11.** In pertinent part, section 5102 of the statute provides:

(b) **Retroactivity.**—Except as provided in subsection (c), sections 5105, 5106, 5107, 5203 (relating to construction and validity of declaration and bylaws), 5204 (relating to description of units), 5218, 5219 (relating to amendment of declaration), 5223 (relating to merger or consolidation of planned community), 5302(a)(1) through (6) and (11) through (15) (relating to power of unit owners' association), 5311 (relating to tort and contract liability), 5315 (relating to lien for assessments), 5316 (relating to association records), 5407 (relating to resales of units) and 5412 (relating to effect of violations on rights of action) and section 5103 (relating to definitions), to the extent neces-

sary in construing any of those sections, apply to all planned communities created in this Commonwealth before the effective date of this subpart; but those sections apply only with respect to events and circumstances occurring after the effective date of this subpart **and do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.**

(b.1) **Retroactivity.**—

(1) Sections 5103, 5108, 5113, 5220(i) (relating to termination of planned community), 5222 (relating to master associations), 5302(a)(8)(i), (16) and (17) (relating to power of unit owners' association), 5303(a) and (b) (relating to executive board members and officers), 5307 (relating to upkeep of

cedes that the section it seeks to apply, "[s]ection [ ] 5301[,] is not one of the enumerated sections which were dubbed [sic] as retroactively applicable in § 5102." [12] (Trial Ct. Op., 12/28/12, at 15) (emphasis added).[13]

Nevertheless, the trial court maintains that section 5301 must be accorded retroactivity. (*See id.*). The court appears to reason that because the definition of "Association" in section 5103 is incorporated by reference into other provisions of the statute, which are expressly determined to apply retroactively, then section 5301, organization of unit owners' association, must apply retroactively as well. (*See id.*). The court reasons generally that unless the Act is applied retroactively to this case, the rights and remedies available through a unit owners' association would not be available to the unit owners of Mystic Mountain. (*See id.* at 14).

The court also posits a variety of presumed "absurdities" which would follow if a unit owners' association is not available retroactively. (*Id.* at 14, 15; *see also id.* at 16–18). These assumed absurdities range from a variation on the lack of association-based remedies to rather melodramatic ca-

lamity scenarios (*e.g.*, "an overreaching developer [creating] a despotic fiefdom"). (*Id.* at 20). Such assumptions are purely speculative, and beyond the proper scope of review of preliminary objections. The court concludes that "[i]n fairness and equity a remedy must be available if [Appellees'] facts are proven." (*Id.*). We disagree.

Primarily, the trial court's reasoning ignores the fundamental principle of statutory interpretation that we may not disregard a statute's plain language in order to pursue the statute's perceived spirit. *See* 1 Pa.C.S.A. § 1921(b). The plain language of the Act, as conceded by the trial court, does not include section 5301 in the list of provisions accorded retroactive application. Assuming a remedy "must be available[,]" and reading an implied retroactivity provision into the Act to provide it, is a translucent example of disregarding the plain language of the statute under the pretext of following its spirit. (Trial Ct. Op., 12/28/12, at 20).

Secondly, under section 5301, a unit owners' association must "be organized no later than the date the first unit in the planned community is conveyed to a per-

---

planned community), 5314 (relating to assessments for common expenses) and 5319 (relating to other liens affecting planned community), to the extent necessary in construing any of those sections, apply to all planned communities created in this Commonwealth before the effective date of this subpart, but those sections apply only with respect to events and circumstances occurring after the effective date of this **subsection and do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.**
68 Pa.C.S.A. § 5102(b), (b.1) (emphases added).

**12.** Section 5301, organization of unit owners' association, provides:

A unit owners' association shall be organized no later than the date the first unit in

the planned community is conveyed to a person other than a successor declarant. The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the planned community, of all former unit owners entitled to distributions of proceeds under section 5218 (relating to easement to facilitate completion, conversion and expansion) or their heirs, successors or assigns. The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.
68 Pa.C.S.A. § 5301.

**13.** Additionally, the court conceded that "the General Assembly determined that the substance of § 5301 may not be applied retroactively." (Trial Ct. Op., 12/28/12, at 15).

son other than a successor declarant." 68 Pa.C.S.A. § 5301. Here, that would be impossible. It is undisputed that the first unit was conveyed in 1974. "[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1).

Third, under section 5102 of the Act, "those sections [which apply retroactively] apply only with respect to events and circumstances occurring after the effective date of this subpart and **do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.**" 68 Pa.C.S.A. § 5102(b) (emphasis added). Similarly, under section (b.1), both (1) and (2), the enumerated retroactive provisions:

> [A]pply to all planned communities created in this Commonwealth before the effective date of this subpart, but those sections apply only with respect to events and circumstances occurring after the effective date of this subsection and do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.

68 Pa.C.S.A. § 5102(b.1)(1) (emphasis added). Subsection (b.1)(2) contains an additional time limitation of 180 days, but otherwise substantially tracks subsection (b.1)(1):

> (2) Section 5303(c) and (d), to the extent necessary in construing any of those subsections, apply to all planned communities created in this Commonwealth before the effective date of this subpart, but those subsections apply only with respect to events and circumstances occurring 180 days after the effective date of this subsection and **do not invalidate specific provisions con-**

**tained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.**

68 Pa.C.S.A. § 5102(b.1)(2) (emphasis added). "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a).

"It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute." *Sagamore Estates Prop. Owners Ass'n v. Sklar,* 81 A.3d 981, 984 (Pa.Super.2013) (quoting *J.C.B. v. Pennsylvania State Police,* 35 A.3d 792, 794 (Pa.Super.2012)). Finally, the court's decision ignores the statutory presumption against retroactive effect. *See* 1 Pa.C.S.A. § 1926.

Accordingly, in this appeal, we conclude that the trial court's attempt to read into the Act a retroactive requirement for the mandatory formation of a unit owners' association under the UPCA violates the plain meaning of the statute and well-established principles of statutory interpretation.

■■■ Our sister Commonwealth Court has recently reached a similar conclusion, albeit applying it to different issues.[14] *See Pinecrest Lake Community Trust ex rel. Carroll v. Monroe County Bd. of Assessment Appeals,* 64 A.3d 71 (Pa.Cmwlth. 2013). In pertinent part, the Court explained:

> Additionally, in addressing the issue of whether the UPCA applies to preexisting planned communities as well as new ones, the Uniform Law Commissioners stated (with emphasis added):
>
> Two conflicting policies are proposed when considering the applicability of this Act to 'old' and 'new' planned communi-

---

14. "Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive." *In re Barnes Foun-* *dation,* 74 A.3d 129, 134 n. 2 (Pa.Super.2013), *appeal denied,* —— Pa. ——, 80 A.3d 774 (Pa. 2013) (citation omitted).

ties located in the enacting state. **On the one hand, it is desirable, for reasons of uniformity, for the Act to apply to all planned communities located in a particular state, regardless of whether the planned community was created before or after adoption of the Act in that state.** No state has previously enacted comprehensive legislation dealing with planned communities. Adoption of this Act, which (among other things) places requirements on developers and unit owners' associations, may tend to develop different markets for planned communities created before and after adoption of the Act. In addition, to the extent that 'old' planned communities are governed only by common law while 'new' planned communities are governed by the additional provisions of this Act, confusion may result in the minds of both lenders and consumers.

**On the other hand, to make all provisions of this Act automatically apply to 'old' planned communities might violate the constitutional prohibition of impairment of contracts.** In addition, aside from the constitutional issue, automatic applicability of the entire Act almost certainly would unduly alter the legitimate expectations of some present unit owners and declarants.

**Accordingly, the philosophy of this section reflects a desire to maximize the uniform applicability of the Act to all planned communities in the enacting state, while avoiding the difficulties raised by automatic application of the entire Act to pre-existing planned communities.**

*Id.* at 76 (citing 68 Pa.C.S.A. § 5102 Uniform Law Comment) (emphasis added in original). The Commonwealth Court further noted:

In addition, 68 Pa.C.S. §§ 5102(b) and (b)(1), provide for a limited retroactive application of certain provisions of the UPCA. Those sections, however, do not

include 68 Pa.C.S. § 5301 (organization of unit owners' association) as a retroactive provision. As the drafters of the UPCA recognized, common law homeowners' association regimes may take many forms, including trusts and many other combinations of real and personal property ownership. *See Uniform Law Comment* preceding 68 Pa.C.S.A. § 5101[.] Thus, the drafters correctly reasoned that the application of certain organizational requirements of the UPCA to pre-existing planned communities could violate the constitutional prohibition against impairment of contracts and lead to confusion among unit owners and declarants. *See* 68 Pa.C.S.A. § 5102 **Uniform Law Comment[.]**

*Id.* at 80 (emphasis added; original emphasis and record citations omitted). The Commonwealth Court also observed in *Huddleson v. Lake Watawga Prop. Owners Ass'n,* 76 A.3d 68 (Pa.Cmwlth.2013):

Generally, the Act applies to planned communities created after 1997 when the Act became effective. Parts of the Act apply retroactively to planned communities created prior to the effective date of the Act. Section 5102(b) of the Act sets forth the specific sections of the Act that apply retroactively. That section also makes it clear that "those sections apply only with respect to events and circumstances occurring after the effective date of this subpart and **do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities."** 68 Pa.C.S. § 5102(b) (emphasis added).

*Id.* at 72. The *Huddleson* Court noted our Supreme Court's holding that "provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties whose interests are thereby impaired." *Id.* (quoting *Schaad v.*

*Hotel Easton Co.,* 369 Pa. 486, 87 A.2d 227, 230 (1952)). We follow the holding of our Supreme Court. We find the reasoning of the Commonwealth Court, applying the holding of the Supreme Court, persuasive, and adopt it as our own.[15]

■ The trial court reasons in the alternative that "the Restatement [ (Third) Property Servitudes] provides another basis to conclude that [Little Mountain] may be an 'association' and that Mystic Mountain is a 'common-interest community' as those terms are used in the Restatement." (Trial Ct. Op., 12/28/12, at 19). The trial court's reliance is misplaced.

The Restatement at issue here, like all Restatements—as the title suggests—represents the efforts of numerous scholars and other experts, under the auspices of the American Law Institute, to restate, or express, "a comprehensive modern treatment of the law of servitudes that substantially simplifies and clarifies one of the most complex and archaic bodies of 20th century American law." RESTATEMENT (THIRD) PROPERTY SERVITUDES (2000), Introduction. "The underlying law is largely judge-made. Doctrine varies around the country." *Id.,* Foreword.

While the Restatement endeavors to be a comprehensive statement of the Common Law, as articulated in caselaw, and may be cited as such by the courts of our Commonwealth, it does not have the force of law unless our Supreme Court expressly adopts it or it is deemed to be a proper statement of Pennsylvania law. *See Bilt–Rite Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 866 A.2d 270, 287 (2005) (adopting section 552 of Restatement (Second) Torts as "consistent with Pennsylvania's traditional common law formulation of the tort of negligent misrepresentation");[16] *(see also id.* at 285); *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.,* 610 Pa. 371, 20 A.3d 468, 478–79 (2011) (adopting Restatement (Second) of Torts § 772, as formulation consistent with Pennsylvania law).

■ Furthermore, "[w]here the Legislature expressly provides a comprehensive legislative scheme, these provisions supersede the prior common law principles." *Sternlicht v. Sternlicht,* 583 Pa. 149, 876 A.2d 904, 912 (2005). Accordingly, the trial court erred in reasoning that the Restatement established an independent legal basis for retroactive enforcement of the UPCA.

Because we determine that there is no proper basis for concluding that section 5301 of the Act must be applied retroactively, we further conclude that Appellees could not prevail under the UPCA. Therefore, even if we accept as true all well-pleaded, material facts together with all reasonable inferences, Appellees' complaint would be insufficient to establish their right to statutory relief. *See Yocca, supra; Friedman, supra; Joyce, supra.*

■ On independent review, we discern no other basis on which Appellees'

---

**15.** *See also Rybarchyk v. Pocono Summit Lake Property Owners Ass'n, Inc.,* 49 A.3d 31, 35–37 (Pa.Cmwlth.2012), *appeal denied,* 620 Pa. 712, 68 A.3d 910 (Pa.2013) (concluding, on different facts, that subdivision was not "planned community" as defined in UPCA, precluding assessment for recreational facilities of private club consisting of fewer than all homeowners in community; post-establishment association was not "association" as defined by the Act).

**16.** Our Supreme Court noted, "[i]n so doing, we emphasize that we do not view Section 552 as supplanting the common law tort of negligent misrepresentation, but rather, as **clarifying the contours** of the tort as it applies to those in the business of providing information to others." *Bilt–Rite Contractors, supra* at 287 (emphasis added).

claim of a statutory right to form a compulsory unit owners' association for all units, and to take title to the property now owned by Appellant, could survive Appellant's first preliminary objection.[17] Accordingly, we conclude that the trial court erred in not sustaining that objection.

This is the only claim of error raised in Appellant's statement of questions involved. For clarity, we expressly decline to address any issues arising out of the trial court's overruling of the remaining (second, third and fourth) preliminary objections.[18] *See* Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Pa.R.A.P. 2116(a).

We vacate the order to the extent it overrules Appellant's first preliminary objection. We remand the case for further proceedings consistent with this opinion.

Order vacated in part. Case remanded. Jurisdiction relinquished.

---

**17.** We also note the testimony of Father David John Dormer, and retired New Jersey State Trooper David Mackafee, both unit owners, that neither were requested to approve, or in fact approved of, the instant lawsuit. (*See* N.T. Hearing, 12/04/12, at 22, 28–29, respectively).

**18.** However, we disagree with the trial court's conclusion that "[i]f [Little Mountain] may not be an association, all of the [preliminary objections] must be granted." (Trial Ct. Op., 12/28/12, at 9). Appellees may still be able to prove breach of fiduciary duty, promoter's duty, implied contract, or detrimental reliance, independently of the UPCA. (*See supra* at 1194, n.8). Accordingly, we remand without prejudice to either party's raising at trial, or in appropriate pre-trial motions, the respective claims or defenses addressed in the second, third or fourth preliminary objection.