J-A31022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRIAN DOWLING, | | IN THE SUPERIOR COURT OF |
| | | PENNSYLVANIA |
| Appellant | | |
| | | |
| v. | | |
| | | |
| PENNSYLVANIA PSYCHIATRIC INSTITUTE, MICHAEL J. FELICE, AND WANDA GEESEY, | | |
| | | |
| Appellees | | No. 473 MDA 2014 |

Appeal from the Order Entered March 4, 2014
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2012-CV-10599-CV

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY BOWES, J.*:                    **FILED JUNE 08, 2015**

Brian Dowling appeals from the March 4, 2014 order sustaining a demurrer filed by Appellees Pennsylvania Psychiatric Institute ("PPI"), Michael J. Felice, and Wanda Geesey, and dismissing this action.  We reverse.

Mr. Dowling averred the following in his first amended complaint.  In 2008, Dowling was hired as the Director of Finance for defendant PPI and routinely received exceptional or above-average performance evaluations

_____

* This case was reassigned to this author on April 28, 2015.

from his supervisors. During certain periods, Dowling served as the *de facto* Chief Financial Officer ("CFO").

On September 13, 2010, Dowling interviewed defendant Felice for the position of CFO. Dowling did not recommend Felice for the position, concluding that he lacked appropriate interpersonal skills and experience in two different business areas. Felice nevertheless was hired in 2011 for the CFO position, and Dowling thereafter trained him.

Felice initially had a positive relationship with Dowling but grew to resent him as PPI employees continued to seek assistance from Dowling. As his relationship with Dowling deteriorated, Felice became close with defendant Geesey, Director of Human Resources for PPI. Geesey disliked Dowling due to events occurring in 2012.[1]

---

[1] Specifically, Dowling averred the following. Another PPI employee, R.L. a/k/a C.L., underwent sex reassignment surgery. In March 2012, shortly before R.L. was to return to work, Dowling told PPI personnel that he believed that R.L. should not continue to work with children. R.L., prior to the operation, worked in the children's unit. Geesey was angered by these remarks since she thought that Dowling's objection to R.L.'s assignment to engage with children arose from R.L.'s gender change. Dowling's concerns were actually based upon the fact that R.L. had been accused of sexually assaulting a former patient who was a minor child.

Since civil litigation accusing R.L. of sex assault against the child was pending, Dowling suggested that PPI assign R.L. to the adult unit upon R.L.'s return. PPI continued R.L.'s assignment in the children's unit, and Dowling was reprimanded for harassment. Geesey did not believe that Dowling was sufficiently punished by PPI.

In 2012, PPI hired an interim Chief Executive Officer and retained MSA Executive Search ("MSA"), an executive search practice, to find a permanent CEO. Geesey was appointed by PPI as one of the members of the search committee and was the only member of the search committee who worked for PPI. Jane Groves, an Executive Vice President and Senior Advisor for MSA, subsequently met with PPI personnel, including Dowling, to discuss the search process. Groves encouraged Dowling to submit his resume for the position. At that time, Groves told Dowling that "his submission would be kept confidential, such that no one at PPI would know that Dowling applied for the job, with the exception of the search committee." Complaint, 7/11/13, at ¶ 22. On "July 6, 2012, in reliance upon Groves' express representation, Dowling submitted his resume for the CEO position." *Id*. at ¶ 23.

On Friday July 13, 2012, Groves informed Dowling that she was going to speak to the search committee about Dowling's interest in becoming CEO. On Monday July 16, 2012, Felice, in Geesey's presence, terminated Dowling's employment. When Dowling asked why he was being dismissed, Felice and Geesey refused to answer. Instead, Dowling was told that July 16, 2012 was his last day at PPI, that security was waiting for him, and that he was not permitted to retrieve any personal items in his office. Dowling then spoke with interim CEO William B. Daly, who told Dowling that it was Felice's decision to fire Dowling. Daly refused to provide further information.

Dowling's personnel file did not contain a reason for his termination from employment. In firing Dowling, Felice and Geesey failed to abide by the four-step termination process contained in PPI's employee handbook. Those steps included a verbal warning, a written warning, suspension, and then termination. Dowling had been earning $75,000 a year when he was fired.

Dowling set forth a breach of contract claim against PPI. He alleged that PPI breached its employment agreement as well as a "confidentiality agreement with Dowling," which caused him damages in excess of the jurisdictional amount requiring arbitration. *Id*. at ¶ 32. Dowling also pled a promissory estoppel cause of action against PPI as follows: 1) "PPI by way of its agent, made a promise to Dowling that, except for the search committee, no one at PPI would know if he submitted his resume for the CEO position, which PPI should have reasonably expected to induce action on his part;" 2) "Dowling submitted his resume in reliance on this promise;" and 3) "Injustice can be avoided only by enforcing this promise, because, but-for this promise, Dowling would still be employed by PPI." *Id*. at ¶¶ 35-37.

As to defendants Felice and Geesey, Dowling set forth a claim for intentional interference with a contractual relationship. Dowling maintained that he had an employment agreement and/or confidentiality agreement with PPI; that Geesey, with an intent to harm Dowling, interfered with both contracts; and that Felice and Geesey, without justification or privilege and

with actual malice toward Dowling, interfered with these contracts. The actions by Felice and Geesey were contrary to PPI's interests and caused Dowling harm by precipitating his termination of employment with PPI. *Id*. at ¶ 43.

The three defendants demurred to the complaint, which was dismissed. The trial court concluded that Dowling could not maintain an action for breach of an employment agreement because employment is at will under Pennsylvania law. As to the causes of action for breach of the confidentiality agreement contained in the complaint, the trial court ruled that Dowling had failed to set forth the terms of a contract regarding confidentiality and that, if he had, it was not supported by consideration. It also ruled that the promissory estoppel claim could not survive since it was premised solely upon breach of an employment agreement, which was at-will and freely terminable by PPI. In this appeal from dismissal of his complaint Dowling raises these issues:

> I. Whether it was an error of law for the Court of Common Pleas to sustain Appellees' Preliminary Objections in the nature of a Demurrer as to Appellant's claim for Breach of Contract, where the contract sued upon was not an employment contract, but a confidentiality agreement formed orally between Appellant Dowling and Appellee Pennsylvania Psychiatric Institute's agent, Jane Groves?

> II. Whether the Court of Common Pleas committed an error of law by sustaining Appellees Preliminary Objections in the nature of a Demurrer as to Appellant's claim of Promissory Estoppel, where Appellant has alleged that Appellee Pennsylvania Psychiatric Institute's agent, Jane Groves,

promised Appellant confidentiality, where Appellant justifiably relied on this promise of confidentiality, and harm resulted therefrom?

III. Whether the Court of Common Pleas committed an error of law by sustaining Appellees' Preliminary Objections in the nature of a Demurrer as to Appellant's Interference with Contractual Relations claim, where Appellant alleged that Appellees Geesey and Felice interfered with the oral confidentiality agreement he had entered into with the Pennsylvania Psychiatric Institute's agent, Jane Groves.

Appellant's brief at 4.

Dowling has abandoned any claim that PPI breached an employment agreement between Dowling and PPI. His positions are that there was a valid, orally-formed confidentiality agreement that was breached by PPI, that he pled a valid promissory estoppel claim against PPI based upon violation of the confidentiality agreement, and that his intentional interference with contractual relations claim was viable since he averred that, for personal reasons and contrary to PPI's interests, Felice and Geesey interfered with the intact employment relationship that Dowling had with PPI.

In light of the arguments raised on appeal, we note that PPI's brief is not responsive to them. It insists that the breach of contract cause of action is not viable since it was premised upon a breach of its employment contract, which was at will, with Dowling and that a promissory estoppel claim will not lie when the underlying contract is an at-will employment contract. It also maintains that the intentional interference with a contractual relationship cause of action cannot proceed since Geesey and

Felice, as managers of PPI, had the authority to terminate Dowling on behalf of PPI, and cannot be held accountable for exercising that authority.

Since a trial court's "decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary." **Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.**, 92 A.3d 1191, 1195 (Pa.Super. 2014). Preliminary objections in the nature of a demurrer can be granted only "when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." **Id**. Significantly, "when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts." **Id**.

On appeal, Dowling maintains that MSA's employee Groves agreed to hold in confidence the fact that he submitted his resume for the CEO position. He continues that this confidentiality agreement was binding on PPI since it was entered by PPI's agent, MSA, and that it was supported by consideration as it conferred a benefit on MSA and PPI.

Specifically, Dowling argues that MSA was an executive search organization and its job was to "seek out candidates for the job on behalf of PPI and to get any identified candidate to submit their name for consideration. Thus, MSA was furthering PPI's interests when Groves asked Appellant Dowling to apply for the CEO position." Appellant's brief at 13. Dowling submitted his resume based upon Grove's promise that it would

remain confidential within the search committee. Thus, the bargained-for exchange of "Dowling's candidacy for PPI's promise of confidentiality served as the consideration for [the] oral contract." *Id*. The breach of this contract occurred when Geesey disclosed Dowling's candidacy to Felice. *Id*. at 14. Felice fired Dowling to protect his own position and in contravention to the interests of PPI, thereby causing Dowling harm. Dowling notes that, since his causes of action are premised entirely upon breach of the confidentiality agreement, the law regarding at-will employment in Pennsylvania is inapplicable.

We first find that Dowling sufficiently pled that PPI was bound by a confidentiality agreement entered by MSA. As we noted in ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 799 (Pa.Super. 2012) (citations omitted),

> A corporation is a creature of legal fiction, which can act or "speak" only through its officers, directors, or other agents. Where a representative for a corporation acts within the scope of his or her employment or agency, the representative and the corporation are one and the same entity, and the acts performed are binding on the corporate principal.

The allegations contained in the complaint, which we must accept as true, were that PPI entered into an agreement with MSA to have MSA form the search committee for PPI's new CEO. These facts were sufficient to aver that MSA was PPI's agent for purposes of obtaining a new CEO for PPI. MSA's employee, Groves, promised Dowling that, if he submitted his resume, that fact would remain confidential among the members of the

search committee. This promise was made during the course and within the scope of the agency agreement between MSA and PPI and was binding on PPI.

Additionally, contrary to the trial court, we conclude that Dowling sufficiently pled a breach of contract claim. "To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Albert v. Erie Ins. Exchange*, 65 A.3d 923, 928 (Pa.Super. 2013) (quoting *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010)). The essential terms of this contract were that Dowling would agree to be considered a candidate for the CEO position, and, in exchange, Groves would ensure that his candidacy would remain a secret among the members of the search committee.

Furthermore, contrary to the trial court's conclusion, Dowling set forth a sufficient basis for a finding that the contract was supported by consideration. "The requirement of consideration as an essential element of a contract is nothing more than a requirement that there be a bargained for exchange. Consideration confers a benefit upon the promisor or causes a detriment to the promisee." *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1250 (Pa.Super. 1989) (citations omitted). Dowling alleged that a benefit was conferred upon MSA/PPI in that they were seeking a new CEO and sought as many qualified candidates as possible. In pursuit of that goal,

Dowling continues, Groves solicited Dowling's candidacy. Dowling maintains that a benefit was thereby conferred upon MSA/PPI in entering into the confidentiality agreement since it obtained another candidate, whom Groves considered qualified since she solicited Dowling's resume for the CEO position. Thus, the averments in the complaint are sufficient to set forth that there was consideration for the oral contract.

Additionally, we conclude that the inference created by the pled facts support that the confidentiality agreement was breached by Geesey, a member of the search committee. The averments were as follows. Dowling submitted his resume to Groves, and she said on a Friday that she would discuss Dowling's candidacy with the search committee. Geesey was a member of that committee, was the only PPI employee who was a member of the search committee, Geesey had a close personal relationship with Felice, and both Geesey and Felice disliked Dowling. Dowling was fired by Felice the next working day after Groves said that she would contact the search committee about Dowling's candidacy. Dowling was fired in the presence of Geesey. The termination was not performed in conformity with the requirements for terminating an employee, as outlined in PPI's handbook. Additionally, there was no reason given for the termination verbally, in Dowling's personnel file, or in the written termination letter. Dowling's job performance reviews did not indicate grounds for termination.

The clear inference created by these averments is that Geesey, in breach of the oral confidentiality agreement entered by PPI, immediately informed her friend Felice about Dowling's candidacy for CEO. Due to Felice's and Geesey's personal animosity against Dowling, Felice was fearful for his job and fired Dowling. It is settled, as noted *supra*, that a plaintiff is entitled to all inferences fairly deducible from the alleged facts. The facts under consideration herein therefore are sufficient to support an inference that Geesey breached the confidentiality agreement. Dowling also pled resultant damages in that he averred that he lost a job where he earned $75,000 annually once Felice, in violation of the confidentiality agreement, discovered that Dowling was seeking the CEO position.

The learned dissent would affirm the grant of a demurrer on the basis that Dowling failed to specifically allege: 1) when Groves told the search committee about Dowling's application; and 2) Geesey, a member of search committee, violated the confidentiality agreement that he entered with Groves. Dissenting Memorandum at 4, 5.

However, Dowling was required to verify the facts set forth in the complaint and could not make any allegation that was not actually within his knowledge. He knew only the following: when Groves told him that she would tell the search committee about his proposed candidacy; he was fired the working day after Groves told him that she was going to speak with that committee; Geesey was a member of the search committee and was present

when he was fired; and no reason was given for his termination. Since Dowling could not aver and verify facts that were not known to him, we must enforce with vigor the mandate to accord him all fairly reasonable inferences from the facts that were within his knowledge.

The dissent's conclusion is not persuasive for another reason. Dowling has not had the opportunity to conduct discovery because the trial court dismissed his case at the most preliminary stage of the lawsuit. Dowling should, at the very least, be accorded the opportunity to depose the individuals who were involved in these events before his action is dismissed. Through the conduct of depositions and dissemination of interrogatories and requests for the production of documents, Dowling may well prove his case.

Dowling next argues that he set forth a valid claim of promissory estoppel. If there is no enforceable agreement between the parties in that the agreement is not supported by consideration, "the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." ***Crouse v. Cyclops Industries***, 745 A.2d 606, 610 (Pa. 2000) (citing Restatement (Second) Contracts § 90).

> In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on

the promise; and 3) injustice can be avoided only by enforcing the promise. As promissory estoppel is invoked in order to avoid injustice, it permits an equitable remedy to a contract dispute.

*Id*.

Herein, according to the complaint, the following occurred. Groves made a promise to keep Dowling's CEO candidacy confidential, and she should reasonably have expected to induce him to submit his resume based upon that promise. Dowling gave Groves his resume in reliance on the promise that this action would remain confidential, known only to the members of the search committee. The first working day after Groves said that she would report Dowling's candidacy to the search committee containing Geesey, Dowling was fired in Geesey's presence by Felice without reason and in violation of the procedures in the corporate handbook. At the time, Dowling had been employed for four years at PPI and consistently received good performance ratings. An injustice would thereby result if the promise made by Groves was not enforced because breach of that representation caused Dowling to be terminated. If these allegations are accepted as true, which they must be, we conclude that they are sufficient to set forth a promissory estoppel cause of action.

As to Felice and Geesey, we concur with Dowling's position that he pled a cause of action for intentional interference with contractual relations. "[A]n action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the

parties." ***Yaindl v. Ingersoll–Rand Co. Std. Pump–Aldrich Div.,*** 422 A.2d 611, 619 n.6 (Pa.Super. 1980), *abrogation on other grounds recognized in **Yetter v. Ward Trucking Corp.,*** 585 A.2d 1022 (Pa.Super. 1991). There are four elements to an intentional interference with a contractual relationship claim:

> (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

***Foster v. UPMC South Side Hosp.***, 2 A.3d 655, 665-66 (Pa.Super. 2010). To satisfy the third element, the plaintiff must provide proof that the defendant's actions were improper. ***Id***.

The complaint avers the existence of an employment contract between Dowling and PPI. As articulated in ***Yaindl***, ***supra***, an action for intentional interference with a contractual relationship is viable even if the contract with which the defendant interfered was terminable at the will of the parties.

Dowling further set forth the following. Felice and Geesey sought to harm Dowling by terminating the contract between Dowling and PPI and improperly interfered with that contact. Dowling was performing his job in an exemplary manner and was not in danger of being fired. Felice terminated Dowling solely due to the existence of personal malice against Dowling by Felice and his friend Geesey. Dowling alleged specifically that

the firing was **contrary** to PPI's interest. Geesey and Felice were not privileged or justified in interfering with Dowling's employment contract with PPI since they did so due to unwarranted ill-will and malice rather than based upon his job performance and to advance PPI's welfare. These factual assertions were sufficient to plead a cause of action for intentional interference with a contractual relationship.

In this respect, we do not agree with PPI's position that Felice and Geesey were acting on behalf of PPI and cannot be held accountable for intentional interference with the employment contract between PPI and Dowling. *See Adams v. USAir, Inc.*, 652 A.2d 329, 330 (Pa.Super. 1994) (emphasis added) ("managerial employees **acting within the scope of their employment** are not third persons for purposes of satisfying the elements required to maintain an action for interference with contractual relations"). According to the averments in the complaint, which we must accept as true, Felice and Geesey were not acting on behalf of PPI in connection with the firing; they were acting contrary to PPI's benefit. As outlined in the complaint, Dowling's performance provided no rationale for the firing, the termination was not conducted in accordance with PPI's own handbook, and no reason was ever offered for the termination. Instead, in firing Dowling, Felice and Geesey were acting solely for personal reasons and based upon their personal *animus* toward Dowling. These averments were sufficient to overcome a demurrer in connection with this cause of action.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judge Stabile joins this memorandum.

Judge Ott files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2015