Lance *v.* Mann, Appellant.

Argued November 28, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert T. McCracken,* with him *C. Russell Phillips* and *William E. Schubert,* for appellant.

*Henry Thomas Dolan,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 7, 1946:

We have here the not unfamiliar problem of applying the provisions of a contract to a situation which the parties did not contemplate at the time they entered into the agreement. In such a case the solution must be sought from a study of the surrounding circumstances, the situation of the parties, the objects they apparently had in view, and the nature of the subject-matter of the contract: *Slonaker v. P. G. Publishing Co.,* 338 Pa. 292, 296, 13 A. 2d 48, 50, 51; *Hindman v. Farren,* 353 Pa. 33, 35, 44 A. 2d 241, 242.

On June 12, 1942, plaintiff and defendant dissolved a partnership which they had theretofore conducted in a business known as Modern Tool & Die Company. Plaintiff assigned all his right, title and interest in the business to defendant who was thereafter to conduct it solely on his own behalf, defendant covenanting to pay all the debts and discharge all the obligations of the partnership whether "actual or contingent, present or future" and to keep plaintiff indemnified against all

liabilities. Defendant agreed to pay plaintiff the sum of $200,000 as the value of his share in the partnership, and also "to assume responsibility for and pay all Federal income taxes on the partnership earnings of the said retiring partner from January 1st, A.D. 1942, to June 12th, A.D. 1942, as if those earnings were the total earnings of Lemuel R. Lance, Jr., the retiring partner, from all sources for the year 1942." It is on this latter obligation for the payment of income taxes that the present action is based.

At the time of the dissolution of the partnership the books showed that the earnings from January 1 to June 12, 1942, were $164,566.97 of which plaintiff's share was one half, or $82,283.48, and it was presumably that amount which was adopted by the parties in fixing the total purchase price for plaintiff's interest in the business as of that date. Plaintiff filed his income tax report for the year 1942 showing a tax due of $54,919.13, of which $50,008.59 represented the amount that would have been payable on his profits when calculated as if they had constituted his total earnings from all sources for that year. On March 17, 1943, defendant paid a quarter of that sum, $12,502.15, but refused thereafter to make any further payments. Accordingly plaintiff himself remitted the remaining instalments to the Collector of Internal Revenue and then brought the present action to recover the amount thus paid, $37,506.44, with interest. Defendant filed an affidavit of defense with new matter and counter-claim; plaintiff filed a reply raising questions of law and also took a rule for judgment for want of a sufficient affidavit of defense. The court made this rule absolute and sustained plaintiff's reply raising questions of law; damages were assessed at the full amount of the claim and interest, a total of $41,069.55.

On the present appeal defendant assumes three alternative positions. The first arises by reason of the fact that on June 9, 1943, there was enacted the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, 78th Congress,

1st Session, Public Law 68, which, in section 6, provided that liability for income tax for the year 1942 should be discharged as of September 1, 1943; in case the individual's tax for 1942 was less than that for 1943 the tax for 1943 was to be increased by an amount equal to 25 per centum of the tax for 1942; in case the tax for 1942 was greater than that for 1943, the tax for 1943 was to be increased by the amount by which the tax for 1942 exceeded the tax for 1943 plus an amount equal to 25 per centum of the tax for 1943. Because of this statute, therefore, defendant claims that plaintiff's tax for the year 1942 was wholly discharged and defendant thereby relieved of all liability in connection therewith under the dissolution agreement; consequently, so far from being indebted to plaintiff, he contends that he is entitled to recover back the $12,502.15 already paid. We find nothing in either the literal phraseology or the spirit of the contract which gives support to such a proposition. What defendant agreed to do was not merely to pay the tax that might be imposed *for the year 1942* on plaintiff's earnings from the partnership, but to pay the tax on those earnings irrespective of the time when, or the period for which, they might be assessed and collected by the government. The basic intent clearly was that plaintiff should receive, for his share in the partnership, the sum of $200,000 free and clear of all income taxes on the profits earned during the year 1942 to the date of dissolution.

The second position asserted by defendant is more persuasive. It appears that whereas plaintiff's income tax for 1942 amounted to $54,919.13 his tax for 1943 was $16,904.16, this being on income in no way connected, of course, with the partnership business from which he had retired on June 12, 1942.[1] Under the terms of the Current Tax Payment Act, however, the tax actually imposed for 1943 was not $16,904.16, but that amount plus the excess of $54,919.13 over that amount (i.e. $38,-014.97) and plus also 25 per centum of $16,904.16, a

total of $59,145.17. On the other hand, if plaintiff had had no income whatever in 1942, had never been in the partnership with defendant at all, and had never made any of the profits upon which defendant's obligation to pay the income taxes was based, he would have been compelled to pay the sum of $16,904.16 as his income tax for 1943.[1] We do not believe that under such circumstances the parties could have intended that defendant should be obligated to pay such part of the tax as plaintiff would have been required to pay in any event on income wholly unconnected with the partnership business and arising from transactions with which defendant was in nowise concerned,[1] but rather that his liability should be measured solely by the extent to which plaintiff's taxes were *increased* by reason of his profits from the business (calculated, according to the agreement, as if those profits had constituted his entire income for the year 1942).[2] Taking, therefore, the sum of $50,008.59 as if it were plaintiff's whole tax for the year 1942, his tax under the Current Tax Payment Act for the year 1943 would have been that sum plus $4,226.04 (one-quarter of $16,904.16) or a total of $54,234.63, but of that amount defendant cannot properly be held liable for more than its excess over $16,904.16, to wit, $37,330.47. Defendant

---

[1] Since the original promulgation of this opinion plaintiff has filed a "petition under rule 85 for further damages", in which our attention is called to the fact that part of the 1943 tax of $16,904.16 was based on an item of "long-term capital gain" reported by plaintiff for that year of $6,252.58, being one-half the amount of the first instalment paid by defendant under his obligation to pay plaintiff's income taxes on the partnership earnings from January 1 to June 12, 1942. In our opinion the contract between the parties did not contemplate that the tax based upon such an item should come within the liability assumed by defendant.

[2] As defendant properly suggests, if plaintiff's income in 1943 from other sources had been greater than his 1942 business profits of $82,283.48 and his tax for 1943 therefore greater than his tax for 1942, it would seem clear that defendant would have been relieved of liability altogether except for the amount of the unforgiven quarter of the 1942 tax,

having already paid $12,502.15, he now remains liable in the sum of $24,828.32 with interest.

The final defense asserted against plaintiff's claim is based upon the fact that the partnership profits from January 1 to June 12, 1942, resulted in whole or in part from war contracts with the government, and defendant avers that sometime after the dissolution he was compelled to renegotiate some of those contracts with the War Department, culminating on August 10, 1943, in a settlement whereby he was obliged to repay to the United States the sum of $66,500, so that instead of the profits being $164,566.97, as they apparently were on the date of the dissolution of the partnership, they were, by such renegotiation, reduced to $98,066.96, the tax on plaintiff's share of which, $49,033.48, would be but $25,065.71, and, by reason of the effect of the Current Tax Payment Act of 1943 as previously analyzed, defendant's obligation in connection with the payment of that tax would be reduced to $12,387.59. There are several reasons why, in our opinion, defendant is not entitled to such a reduction of his liability. In his affidavit of defense he does not furnish any details in regard to the alleged renegotiation proceedings; it does not appear, for example, whether final payment under any of the renegotiated contracts had been made by the government prior to April 28, 1942, which was the date of the enactment of the Sixth Supplemental National Appropriation Act, c. 247, 56 Stat. 226, 77th Congress, 2nd Session, Public Law 528, section 403 of which provided for the renegotiation of war contracts but exempted those where total payment had been made prior to its enactment; neither does it appear that defendant sought or obtained any judicial determination of the question as to whether the government could legally compel renegotiation under the retroactive feature of that act; nor does it appear that defendant at any time gave to plaintiff notice of the renegotiation proceedings, or that the latter was

invited or permitted to participate in such proceedings leading up to the settlement with the government; nor is it disclosed why defendant did not see to it that any permissible abatements in the income taxes for 1943 of the members of the partnership were not immediately credited or offset, at the time of the renegotiation agreement, against the amount of excessive profits eliminated from the partnership contracts. But the *conclusive* answer to defendant's contention is that, notwithstanding the alleged repayment to the government, plaintiff has not contributed, or been required to contribute, any part of such repayment nor relinquished any part of the $200,000 paid to him for his interest in the business; defendant having agreed to assume all the debts and discharge all the obligations of the partnership and to keep plaintiff indemnified against all liabilities, the repayment of the excessive profits to the government became, as between the parties, the obligation of defendant alone. Since plaintiff has not given up any part of the $82,283.48 which were originally calculated to be his profits and on which he paid his tax, and since he has therefore not suffered any loss whatever or shrinkage in his income by reason of the renegotiation of the contracts, there would not seem to be any basis upon which he could claim a refund of any part of the income taxes which he has paid. The result of defendant's repayment of the $66,500 was the diminution of his own share of the profits by the amount of that repayment, so that the benefit of whatever reduction in income tax liability was thereby occasioned would apparently revert wholly to him and no part of it to plaintiff.

The record is remanded with direction to reduce the assessment of damages to $24,828.32, with interest on one-third of that amount from June 15, 1943, on one-third from September 15, 1943, and on one-third from December 15, 1943. As thus modified, the judgment is affirmed.