## Watts Estate

*William S. Morrow,* for heir.

*Richard N. Fox, W. E. Shissler* and *Ralph A. Sheetz,* for exceptants.

CRYTZER, P. J., May 30, 1956.—Sarah C. Watts, late of Penn Township, Perry County, died testate May 20, 1954. By her will duly probated she provided for a partial distribution of her estate as follows:

"I order and direct that my real estate, wherever situate, shall be appraised by three (3) competent and qualified appraisers and that the said real estate shall then be offered for sale to my son, Benjamin F. Watts, he to have the first opportunity to purchase same at the appraised price. If my said son shall not elect to purchase the same, then the real estate shall be offered

at public sale and the proceeds derived therefrom after all debts shall have been paid, be divided equally, i.e., share and share alike between my surviving children."

The estate was solvent.

In December, 1954, the executors, who are two children of decedent other than Benjamin, petitioned the orphans' court to appoint the three appraisers required by the above provision of the will. By order dated December 6, 1954, the court directed Benjamin F. Watts to choose and recommend an appraiser, the other children to choose and recommend a second appraiser, and these two appraisers to choose and recommend a third appraiser. The names of these appraisers were to be submitted to the court within 15 days, their names, addresses and the time of presenting their names to the court to be given to all the heirs. This procedure was followed, the names submitted on December 21, 1954, and no one excepting to their appointment, the court that day appointed them and ordered that 10 days' notice be given all the heirs of the time and place of meeting of the appraisers.

The appraisers after being duly sworn to make a true and just appraisement met several times and could not reach an agreement. On May 11, 1955, in response to a petition by the executors, the court granted a rule on the appraisers to show cause why they should not file their report or their appointment be revoked and the executors be directed to sell the realty at public sale as authorized by the Fiduciaries Act of April 18, 1949, P. L. 512, said rule returnable in 20 days.

The appraisers filed their report forthwith, fixing the value of the farm at $7,850. Benjamin F. Watts filed his election to take at this appraisement. On June 11, 1955, the court directed that copies of the above appraisement, the election, and also the appraisers' answer to the rule be served on all parties and if the

other heirs should agree, they should file written consent to the valuation set forth in the return 15 days after service thereof. Otherwise, the rule to show cause was to be set down for argument.

All the heirs exclusive of Benjamin F. Watts along with the executors filed exceptions to the appraisers' answer and appraisement. The exceptions were two fold: First, they alleged that the appraisement was not the fair, just and reasonable value of the farm; they alleged here for the first time and contrary to their original petition to the court, that a prior "appraisement" had been made; and second, they raised the question of the jurisdiction of the orphans' court to appoint appraisers in accordance with the will of decedent. Although the executors had originally petitioned the assistance of the orphans' court and all parties had submitted to and followed the directives of the court (until the appraisement was reached), the question of jurisdiction is always at issue and it was agreed by the court and counsel that the question of jurisdiction should be argued first. Should it be determined that the court has jurisdiction, then the fairness and accuracy of the appraisement will be argued. Should it be determined that there is no jurisdiction in the orphans' court, and since the parties cannot agree, no one currently knows the next step.

Did the court have authority to appoint the appraisers required by decedent's will? "Jurisdiction of the Orphans' Court being entirely statutory, it is essential that it be clearly defined as a basis of practice and procedure": Remick, vol. 2, page 884. Many cases, among them Martin's Petition, 58 D. & C. 695, hold that the orphans' court is a court of limited jurisdiction, exercising only such power as is given it by statute or by necessary implication.

In the case of Power v. Grogan, 232 Pa. 387 (1911), the Supreme Court examined the basis of jurisdiction

in the orphans' court and held that its procedures were those of a court of chancery but that it had no inherent chancery jurisdiction and was limited to the sphere of jurisdiction conferred specifically upon it. It was further held that the derivation of the powers of the orphans' court was only such as are conferred by or implied from legislation. It has no inherent jurisdiction and the subjects of its jurisdiction are those set down in statutes.

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 33 (*a*) et seq., 20 PS §731, spelled out in detail the procedure to be followed in cases similar to the instant one. The courts and textbook writers followed this procedure. See Hunter's Orphans' Court Commonplace Book, page 788, Legacies, sec. 7(*h*) ; Ludwick's Estate, 255 Pa. 548; Drennan's Estate, 32 Pitts. L. J. 462; Linn v. McGrillis, 13 Dist. R. 440; Gerheim's Estate, 88 Pa. Superior Ct. 530; Shenk v. Shenk, 37 Lanc. 251. In Maxwell's Estate, 60 D. & C. 372, the court deviated from the procedure set forth where the will provided three devisees should each appoint an appraiser; the court permitted each to appoint one and the court appointed the third, exactly the situation here.

However, by the Fiduciaries Act of April 18, 1949, P. L. 512, art XIV, sec. 1401(*a*) (1), the Fiduciaries Act of June 7, 1917, supra, was repealed.

Did the committee which worked so long and brilliantly on the new Fiduciaries Act overlook the reinstatement of section 33, or did it replace section 33 in another section or sections of the new act? The answer is obtuse.

Section 734, 20 PS §320.734, provides:

*"The court, for cause shown, may order the estate to be distributed in kind to the parties in interest,* including fiduciaries. In such case, when there are two or more distributees, distribution may be made of undivided interests in real or personal estate, or

the personal representative or a distributee may request the court to divide, partition and allot the property, or to direct the sale of the property. If such a request is made, the court, after such notice as it shall direct, shall fairly divide, partition and allot the property among the distributees in proportion to their respective interests, or the court may direct the personal representative to sell at a sale confined to the distributees, or at a private or public sale not so confined, any property which cannot be so divided, partitioned or allotted." (Italics supplied.)

In the opinion of the court, the Watts case is a conditional distribution in kind of realty, some of the conditions, but not all, being set forth by the will. Section 734, not only impliedly, but specifically gives the court jurisdiction to complete the conditions of distribution in order to comply with the intent so clearly expressed in the will of testatrix. "In construing the words of any written document, whether it be a . . . will . . . or any other writing, the intent of the parties is the guide to interpretation": Hindman v. Farren, 353 Pa. 33, 44 A. 2d 241; Concannon v. Haile, 81 D. & C. 480.

Were it desired to conclude the transaction in advance of audit, application could be made to the court for authority to make the sale under section 543 or 544 of the Fiduciaries Act of 1949. Presently the court would not look favorably upon such a petition simply because it would violate the clearly expressed intent set forth by testatrix in her will. Her son, Benjamin, had remained on the family homestead all of his life, while the other eight children had established their homes elsewhere. She wanted Benjamin to have the first chance to buy his home, not at a "gift" price and not in competition with other bidders, but at an "appraised value". The court knows of no other method of strictly complying with the terms of the will other than the method followed.

It would seem that the question of jurisdiction is answered by the Orphans' Court Act of August 10, 1951, P. L. 1163, art. I, sec. 101 et seq., 20 PS §2080.101. Article III of the said act, dealing specifically with jurisdiction of the orphans' court states:

"Section 301. Exclusive Jurisdiction.

"The orphans' court shall have exclusive jurisdiction of:

"(1) Decedents' Estates. The *administration and distribution of the real* and personal *property* of decedents' estates. . . .

"(6) Fiduciaries. The appointment, *control*, settlement of the accounts *of . . . all fiduciaries* of estates. . . ." (Italics supplied.)

The powers given the fiduciaries have been extended by the Fiduciaries Act of 1949; the above gives the orphans' court authority to ultimately control these extended powers. The above read in conjunction with the vastly increased powers of fiduciaries (especially with regard to realty), as set out in the Fiduciaries Act of 1949, clearly extends the authority and jurisdiction of the orphans' court rather than restricts it and deletes therefrom. The omission of section 33 of the Fiduciaries Act of 1917 from the Fiduciaries Act of 1949 did not remove the jurisdiction and authority to appoint appraisers when the will so directed and the fiduciaries petitioned the court so to do. It merely removed restrictions on the method and time of appointment and, read with the Orphans' Court Act, extended the court's powers by so doing.

### Order

May 30, 1956: In accordance with the foregoing opinion, the procedure followed in the appointment of appraisers is confirmed; counsel shall agree upon a time and enter the said time on the argument list for taking testimony and hearing argument on the question of the reasonableness of the appraisement. Exception allowed.