# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stillwater Lakes Civic Association, Inc. :
and Stillwater Sewer Corporation :
                                    :
            v.                    :     No. 998 C.D. 2018
                                    :     Argued:  December 12, 2019
George Kuzni,                 :
              Appellant    :

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  February 5, 2020**

George Kuzni (Owner) seeks review of two orders of the Court of Common Pleas of Monroe County (trial court).  Both orders arise from an action by the Stillwater Lakes Civic Association, Inc. (Association) and the Stillwater Sewer Corporation (collectively, Appellees), seeking to collect unpaid dues, assessments, and sewer fees, as well as attorney's fees, from Owner.  The first order, dated March 13, 2017, granted summary judgment in favor of Appellees as to the issue of liability, and the second order, dated June 6, 2018, awarded damages to Appellees in the amount of $43,377.39.  For the following reasons, we reverse and remand.

## I.  BACKGROUND

This matter concerns Owner's properties at 2346 and 2347 Nadine Boulevard, Coolbaugh Township, Pennsylvania (the Properties), within the housing

development known as Stillwater Lake Estates (the community). Sun Dance Stillwater Corporation (Developer) began development of the community in 1968 and sold the first residential lots in 1971. In 1981, Developer conveyed to the Association, a Pennsylvania nonprofit corporation, all roads and certain recreational facilities (including two lakes, a beach, a clubhouse, a pool, and other facilities) within the community. In 1986, Developer conveyed either title to or an easement in the sewer facilities in the community to Stillwater Lakes Sewer Corporation, a wholly owned subsidary of the Association.

Owner purchased the first of the Properties—lot 2346, on which he maintains a residence—in 2004, and the adjoining lot 2347 in 2006. Lot 2347 contains wetlands and remains vacant. The deeds by which Owner took title to the Properties provide that the conveyances are "subject to covenants, conditions, and restrictions which shall run with the land as appear in the chain of title." (Reproduced Record (R.R.) at 71a, 75a, 77a.) Prior deeds for both of the Properties impose identical sets of covenants and restrictions that will run with the land (collectively, the deed covenants), including the following:

> 2. The purchase and ownership of subject lot does not convey or confer upon the PURCHASER any right, title or interest in and to the lake or lakes, stream or streams, swimming pools, or pools, community facility buildings, club house, ski-runs and other types of community facilities and improvements, whether for recreational use or not or any right, title or interest for PURCHASER to use, occupy and enjoy said facilities, improvements, lake or lakes, stream or streams, swimming pool or pools, club house, ski-runs, etc., except that PURCHASER has the right to join SELLER's club when same is formed and use aforesaid facilities, and until same is formed has the right to use the aforesaid facilities, provided that PURCHASER pays SELLER all recreation and road maintenance charges when due and complies

2

with all rules and regulations of club when formed [(covenant 2)].

> 3. PURCHASER agrees to pay to SELLER each and every year a road maintenance and use charge for the maintenance and use of the roads traversing the development, and a recreation charge for maintenance and use of recreational facilities, in such amount as the SELLER in its sole and absolute discretion is to be paid. In any event, the minimum yearly road maintenance and use charge to be paid by PURCHASER shall be $20.00 [(covenant 3)].

> . . . .

> 19. The portion of the lands of the SELLER laid down on the map as streets are [sic] not dedicated to public use and title thereto shall remain in the SELLER subject to the right to convey to another entity with reservations and subject to the right of the PURCHASER and those claiming under them to use the same for ingress and egress . . . [(covenant 19)].

> 20. If the rear lot lines of lake and stream lots . . . do not abut upon the physical stream or lake, then in such case, an easement, for ingress and egress to the lake and stream as the case may be is hereby granted by SELLER to such lot owner commencing from the rear line of subject lot, for the length of such rear line, to the stream or lake [(covenant 20)].

(*Id.* at 103a, 118a.) A prior deed for Lot 2347 makes that lot subject to the Declaration of Covenants, Conditions, and Restrictions of Stillwater Lake Estates, recorded in Monroe County in deed book volume 1121, page 213 (the Declaration).[1] The provisions of the Declaration are substantially similar to the deed covenants. (*See* Original Record (O.R.), Item No. 52, App. F.)

---

[1] The Declaration does not independently apply to the Properties because they are not part of the property described in the Declaration. Accordingly, the Declaration applies to Lot 2347 but not to Lot 2346.

Shortly after purchasing the first of the Properties, Owner began receiving and paying invoices from the Association. For several years, Owner continued to pay in full all invoices from the Association with respect to both Properties. In 2009 or 2010, Owner wrote a letter to the managing director of NEPA Associates, which then managed the community on behalf of the Association, purporting to terminate any membership interest he had in the Association (the termination letter). Either upon or shortly after the termination letter, Owner ceased paying all invoices from the Association with respect to both Properties.

In 2013, Owner's attorney wrote a letter to the Association concerning several citations the Association had issued to Owner for maintaining an "unsightly lot." (Supplemental Reproduced Record (S.R.R.) at 55b.) In the letter, Owner's attorney reiterated that Owner is not a member of the Association. Counsel for the Association responded with a letter stating that "[the Properties are] certainly located within the boundaries of the [Association]" and that, accordingly, Owner is a member of the Association and responsible for assessments for maintenance. (*Id.* at 41b.)

On December 2, 2015, Appellees filed an action in the trial court, seeking to collect "dues, assessments, sewer charges and various other charges," plus late fees, interest, and attorney's fees from Owner for the period during which Owner did not pay Association invoices (approximately 2011 to the present). (R.R. at 3a.) Appellees claimed that, by virtue of his ownership of lots within the community, Owner must be a member of the Association and is subject to the Association's bylaws (Bylaws), which authorize the Association to impose assessments upon members for maintenance of common elements.

4

In anticipation of trial, Appellees secured Owner's deposition. Owner admitted that, during the entire period of his ownership of the Properties, he has driven on roads owned and maintained by the Association in order to access the Properties. Owner also testified that he paid the Association's invoices for assessments in full before 2011, without inquiring about the basis for the charges. He explained that, following the termination letter, he asked the Association to give him a separate accounting of road and sewer maintenance assessments, which he would pay, but excluding "membership dues," which he refused to pay. (S.R.R. at 44b.) After the Association refused to make an itemized accounting and demanded payment in full (and following an alleged mismanagement of one of Owner's previous payments), Owner made no further payments to the Association.

Owner also stated that he has gone boating on the lake adjoining his Properties "more than 30 times" and allowed guests to fish in the lake, including instances of boating and fishing as recently as 2014. (*Id.* at 29b-30b.) He testified that he has never used other Association-owned amenities such as the clubhouse, pool, basketball courts, and beach, but he confirmed that no one has sought to prevent him from doing so. He stated that he has attended "a couple" meetings of the Association, including one in an attempt to address the Association's board concerning the community's sewer system. (*Id.* at 34b.) Owner stated that the board did not permit him to speak and instructed the members present to "just ignore" him. (*Id.* at 36b.) Owner confirmed that, although he did not attempt to vote at the meeting, no one prevented him from doing so.

On March 13, 2017, the trial court granted summary judgment in favor of Appellees, concluding that Owner is obligated to pay the invoiced costs. The trial court reasoned that covenants in Owner's chain of title require him to become and

5

remain a member of the Association and, thus, subject him to assessments. The trial court also stated, without elaboration, that Owner admitted he is a member of the Association[2] and that the Bylaws prohibit termination of membership. For these reasons, the trial court concluded that the Association is authorized to collect the assessments it seeks under Section 5302(a) of the Uniform Planned Community Act (Act), 68 Pa. C.S. § 5302(a). After granting summary judgment on the issue of liability and holding a damages hearing, the trial court awarded Appellees damages in the amount of $43,377.39.

## II. ISSUES

On appeal,[3] Owner argues that the trial court erred in granting summary judgment. Specifically, Owner asserts that genuine issues of material fact exist with respect to: (1) whether, under the Act and in light of the deed covenants, the community qualifies as a planned community and the Association qualifies as a unit owners' association authorized to impose assessments on Owner; (2) whether Owner is a member of, and thus subject to, the Association; (3) whether the Properties are located in a community distinct from the community governed by the Bylaws; and (4) whether the Declaration conflicts with the Bylaws, such that the trial court erred in failing to apply Section 5203(c) of the Act to resolve such a conflict. Owner further argues that, because the trial court erroneously granted summary judgment, we must reverse its later order awarding damages.

---

[2] We find no such admission in the record.

[3] "An order of a trial court granting summary judgment may be disturbed by an appellate court only if the court committed an error of law . . . ." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009). In reviewing a grant of summary judgment, we exercise *de novo* review that is plenary in scope. *Id.*

6

Before addressing Owner's arguments, we note that Owner "admits to using the roads within the [community], and is prepared to pay for his proportional share of sewer charges and for reasonable charges for maintenance of roads." (Br. for Appellant at 8.) Accordingly, Owner disputes only his liability for the invoiced costs associated with the common elements of the community other than the roadways and sewer system.

## III. DISCUSSION

The Pennsylvania Rules of Civil Procedure permit summary judgment "whenever there is no genuine issue of any material fact . . . which could be established by additional discovery or expert report." Pa. R.C.P. No. 1035.2. Thus, Pennsylvania courts may grant summary judgment only "on an evidentiary record that entitles the moving party to a judgment as a matter of law." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 194-95 (Pa. 2007). "In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non[]moving party, and all doubts . . . must be resolved against the moving party." *Id.* at 195. Thus, summary judgment is appropriate only where the right to such a judgment is clear and free from doubt. *Id.* Because the existence of a genuine issue of material fact is a question of law subject to our *de novo* review, we do not defer to the trial court's assessment of that question. *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 818 (Pa. 2017). Instead, we apply on appeal the same summary judgment standard applicable in the trial court. *See Gior G.P., Inc. v. Waterfront Square Reef, LLC*, 202 A.3d 845, 852 n.10 (Pa. Cmwlth.), *appeal denied*, 217 A.3d 1216 (Pa. 2019).

## A. Obligation by Virtue of Ownership

Owner first argues that there exists a genuine issue of material fact regarding whether the deed covenants require him to be a member of the Association or otherwise require payment for recreational facilities. He points out that the deed covenants permit voluntary membership in a "club" and do not give notice of any mandatory unit owners' association. He also emphasizes that the deed covenants require payments "to SELLER," *i.e.*, Developer, not to the Association. He claims that resolving these and other ambiguities in the deed covenants requires factual determinations regarding the intended meaning of the deed covenants.

In response, Appellees argue that Owner waived the issue of ambiguity in the deed covenants by failing to assert it explicitly in his Pa. R.A.P. 1925(b) statement.[4] In the alternative, Appellees assert that the community is a "planned community" under the Act,[5] that assessments are compulsory, and that the deed covenants unambiguously require maintenance payments for recreational facilities, at first to Developer and then to the Association as Developer's successor.

### 1. Construction of Deed Covenants

Generally, the interpretation of a deed—including restrictive covenants contained in a deed—is a question of law for the court. *Starling v. Lake Meade Prop. Owners Ass'n, Inc.*, 162 A.3d 327, 340 (Pa. 2017). "The same principles that apply to the interpretation of a contract apply to the interpretation of a deed." *Id.* at 341.

---

[4] We find Appellees' waiver argument unpersuasive. Owner raised in his Rule 1925(b) statement the issue of "outstanding disputes as to relevant facts," which includes as a subsidiary issue factual issues regarding the meaning of the deed covenants. (R.R. at 637a); *see* Pa. R.A.P. 1925(b)(4)(v) ("Each error identified in the [Rule 1925(b) s]tatement will be deemed to include every subsidiary issue . . . which was raised in the trial court."). Owner raised exactly this issue before the trial court. (*See* O.R., Item No. 30 at 6.)

[5] 68 Pa. C.S. §§ 5101-5414.

Accordingly, the object of our interpretation is to ascertain and effectuate the intention of the parties, viewing the language of the instrument in its entirety. *In re Conveyance of Land Belonging to City of DuBois*, 335 A.2d 352, 357 (Pa. 1975); *Wilkes-Barre Twp. Sch. Dist. v. Corgan*, 170 A.2d 97, 98 (Pa. 1961) ("[The parties'] intention is to be gathered from a reading of the entire contract."). Where the language of the restrictive covenant is clear, "the intent of the parties should be gained from the writing itself." *Hankin v. Goodman*, 246 A.2d 658, 660 n.1 (Pa. 1968).

If, however, the language of the instrument leaves doubt about the intended meaning of a covenant, "the court must look at the circumstances under which the grant was made" in order to determine what the parties intended. *In re Estate of Quick*, 905 A.2d 471, 474-75 (Pa. 2006) (quoting *Hindman v. Farren*, 44 A.2d 241, 242 (Pa. 1945)). The court may consider circumstances such as "the situation of the parties, the objects they apparently ha[d] in view, and the nature of the subject [] matter of the agreement." *Id.* Although the existence of an ambiguity is a legal determination for the court to make, "the resolution of conflicting . . . evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).

Turning to the instant matter, covenant 2 clearly provides that the conveyance of the Properties does not grant the right to use the recreational facilities enumerated in covenant 2 (including the lake, pools, community buildings, and clubhouse). Instead, covenant 2 allows use of those facilities only if an owner voluntarily exercises his "right" (importantly, not his "obligation") to join the

Association and becomes subject to the Association's rules and regulations.[6] Thus, covenant 2 implicitly creates two categories of property owners—those who are members of the Association and those who are not. For owners who do not elect to join the Association pursuant to covenant 2 (nonmember owners), the deed covenants convey no right to use the listed recreational facilities.[7] Importantly, covenant 2 clearly provides that joining the Association (and acquiring the concomitant right to use the listed recreational facilities) is optional.

The language of covenant 3 is equally clear. It requires all owners to make two types of payments to Developer (and, by implication, its successors[8]) in perpetuity: (1) a payment "for the maintenance and use of the roads traversing the [community]," and (2) a payment "for maintenance *and use* of recreational facilities." (R.R. at 103a (emphasis added).) With respect to roads, the perpetual

---

[6] Although covenant 2 gives owners the right to join "SELLER's club," this apparently refers to the Association, as Appellees concede. This view comports with the Declaration's version of covenant 2, which states that "GRANTEE has the right to join the aforesaid ASSOCIATION and use aforesaid facilities." (O.R., Item No. 52, App. F.)

[7] That analysis applies to owners who took title after the Association was formed. For owners who took title before the Association existed, covenant 2 provides a provisional right to use the recreational facilities subject to certain conditions, including maintenance payments to Developer. Although the deed covenants appear to have been drafted at some time before creation of the Association, the initial conveyances of the Properties by Developer did not occur until 1982 and 1983—at least one year after the Association was formed. Because no owners of the Properties could have benefitted from the provisional use right, that portion of covenant 2 is not relevant to our analysis.

[8] The deed covenants "shall run with the land." (R.R. at 102a, 107a.) Here, Developer ultimately conveyed the roads and recreational facilities to the Association, which now enjoys the right to benefit from the covenants benefiting those respective parcels, including covenant 3. *See Goldberg v. Nicola*, 178 A. 809, 810 (Pa. 1935) (holding that grantor of covenant-benefitted property "transferred to his grantee the same right in the covenant that he possessed, with the same obligation imposed"). Moreover, the Declaration—recorded after Developer conveyed the roads and recreational facilities to the Association—requires that the covenant 3 payments be made to "the . . . Association." (O.R., Item No. 52, App. F.)

10

maintenance and use fee is consistent with covenant 19, which gives all owners (including nonmembers) the unqualified right to use the roads in the community.

Covenants 2 and 3, however, appear to contradict one another regarding recreational facilities. On one hand, covenant 3 requires all owners (including nonmembers) to pay a fee for, *inter alia*, "use of" the recreational facilities. On the other hand, covenant 2 allows owners to join the Association, thereby giving them the right to use the recreational facilities, whereas nonmembers have no such right. Thus, covenant 3 applies the recreational facility use fee to all owners, while covenant 2 limits use to members. In other words, covenant 3 appears to impose a *use* fee on some owners who, by virtue of their nonmembership, have no right to *use* the recreational facilities. Thus, the deed covenants appear to conflict. It borders on nonsense to construe the deed covenants as requiring nonmember owners to pay a use fee for recreational facilities which they cannot use.

Thus, reading covenants 2 and 3 together, we are hard pressed to conjecture a "reasonable construction . . . that will accord with the intention of the parties." *Hindman*, 44 A.2d at 242 (quoting *Connery v. Brooke*, 73 Pa. 80, 83 (1873)). We cannot ascertain from the contradictory instrument what the parties intended. Perhaps Developer intended to obligate all owners, including nonmembers, to pay for *maintenance* of the recreational facilities, reasoning that those facilities benefit even owners who do not use them by increasing property values and enhancing the aesthetic appeal of the community. But that construction ignores covenant 3's clear language tying the payment covenant to maintenance *and use* (and, thus, to voluntary membership). Alternatively, Developer might have intended that, upon creation of the Association, only members of the Association would pay for maintenance and use of the recreational facilities. But this view

11

ignores the recreational maintenance and use fee in covenant 3, which even nonmember owners have clearly covenanted to pay in perpetuity.[9]

Neither the parties' briefs nor a review of the record reveals any basis upon which we could choose between these competing constructions. For example, the Declaration retains virtually identical language, except that it removes the provisional right to use the recreational facilities. Moreover, neither of the potential constructions is so inequitable, unusual, or one-sided that we would, as a matter of law, eliminate it as a possibility and adopt another. *Cf. New Charter Coal Co. v. McKee*, 191 A.2d 830, 834-35 (Pa. 1963) (discussing and applying doctrine that given one unreasonable construction and another equitable, reasonable construction, the latter will be adopted). Extrinsic evidence is, therefore, required to determine the proper construction of the deed covenants with respect to the nonmember owners' obligation to pay assessments for recreational facilities. The review, credibility, and resolution of conflicts within that evidence are matters for the factfinder rather than matters of law. *Hutchison*, 519 A.2d at 390. Accordingly, we agree with Owner that the trial court erred in granting summary judgment when the intention of the parties concerning the deed covenants presents a genuine issue of material fact.[10]

---

[9] In raising these two potential constructions for the purpose of analysis, we do not mean to suggest that they are the only viable constructions.

[10] We disagree, however, with Owner's reliance on an unpublished memorandum opinion of the United Stated District Court for the Middle District of Pennsylvania (district court) in *Collazo v. Stillwater Lakes Civic Ass'n, Inc.* (M.D. Pa., No. 3:CV-99-0931, filed August 2, 2002). Owner asserts that, in *Collazo*, the parties ultimately entered into a settlement agreement whereby Collazo terminated his membership in the Association, showing that the deed covenants do not absolutely require membership in the association or payment for recreational facilities. *Collazo* is not mandatory authority, however, and it does not resolve the proper construction of the deed covenants, which requires consideration of the circumstances surrounding the initial conveyance of the Properties that occurred some 20 years before *Collazo* was decided.

## 2. *Obligation Under Act*

The trial court also based its grant of summary judgment on the theory that the Act authorizes the Association to collect assessments for the community's common elements, including the recreational facilities. Although the community, the Association, and the deed covenants were all created before the Act became effective, "certain provisions of the [Act] retroactively apply to all planned communities created before the [Act]'s effective date." *Pinecrest Lake Cmty. Tr. ex rel. Carroll v. Monroe Cty. Bd. of Assessment Appeals*, 64 A.3d 71, 74 (Pa. Cmwlth. 2013) (emphasis omitted). We have applied the definition of "planned community" from Section 5103 of the Act retroactively in many cases to determine whether a pre-Act conveyance creates a planned community. *See, e.g., id.* at 75; *Rybarchyk v. Pocono Summit Lake Prop. Owners Ass'n, Inc.*, 49 A.3d 31, 35 (Pa. Cmwlth. 2012), *appeal denied*, 68 A.3d 910 (Pa. 2013). The Act defines "planned community" as:

> Real estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement, or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person . . . .

68 Pa. C.S. § 5103.

Here, given our construction of the deed covenants, it is clear that, in the language of the Act, Owner "is . . . obligated by covenant . . . to pay [an] amount for . . . maintenance" of, at a minimum, the roadways within the community. Accordingly, we agree with Appellees that the Properties are part of a planned community and are subject to the Act to the extent that its provisions apply

13

retroactively. That is not, however, the end of our inquiry, for retroactive application of the Act "do[es] not invalidate specific provisions contained in existing provisions of [a] declaration." 68 Pa. C.S. § 5102(b). This protection of preexisting arrangements, even if they are contrary to the Act's requirements, reflects a concern "that the application of certain organizational requirements of the [Act] to pre[]existing planned communities could violate the constitutional prohibition against impairment of contracts and lead to confusion among unit owners and declarants." *Pinecrest Lake*, 64 A.3d at 80.

Accordingly, Pennsylvania courts have upheld the organizational structure of pre-Act planned communities even when the regime of underlying covenants differs dramatically from the Act's requirements or typical planned community arrangements. In *Pinecrest Lake*, we examined a pre-Act planned community created by a trust agreement requiring all unit owners to make payments to the trust. We determined that an entity such as the trust need not meet the formal requirements of Section 5301 of the Act[11] to qualify as an "association." Instead, we examined the functional legal regime created by the trust agreement, noting that unit owners paid dues to and were the sole beneficiaries of the trust. We concluded that, because "the [t]rust performs the essential protective functions of an owners'

_____

[11] Section 5301 of the Act provides:

> A unit owners' association shall be organized no later than the date the first unit in the planned community is conveyed to a person other than a successor declarant. The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the planned community, of all former unit owners entitled to distributions of proceeds under [S]ection 5218 [of the Act] (relating to easement to facilitate completion, conversion and expansion) or their heirs, successors or assigns. *The association shall be organized as a profit or nonprofit corporation or as an unincorporated association*.

(Emphasis added.) The trust in *Pinecrest Lake* was obviously not formally consistent with the last sentence of Section 5301.

14

association," the trust could constitute an "association" under the Act without meeting the formal requirements of Section 5301. *Pinecrest Lake*, 64 A.3d at 80-81.

In *Little Mountain Community Association, Inc. v. Southern Columbia Corp.*, 92 A.3d 1191 (Pa. Super. 2014), the Superior Court went further, holding that, because Section 5301 of the Act is not retroactive, the Act does not require the formation of a unit owners' association at all. *Id.* at 1198. The court noted that the restrictions of record authorized, but did not require, the developer to assign responsibility for common elements to a third party. *Id.* at 1194. The court held that an organization of unit owners could not, under the auspices of the Act, force the developer to turn over maintenance responsibilities to them when the restrictions of record did not require the formation of an association. *See id.* at 1198.

In the instant case, with respect to roadways, the deed covenants impose a mandatory requirement of payment in perpetuity, together with a perpetual right to benefit from the roadways. Accordingly, under *Pinecrest Lake*, the Association qualifies as an "association" under the Act for purposes of roadway ownership and maintenance, and, thus, the Association may collect assessments for roadway maintenance under Section 5302(a)(2) of the Act.[12] With respect to recreational facilities, however, the deed covenants are not clear and, once properly construed, might create rights and obligations which, although markedly different from the Act's compulsory assessment regime, we would be bound to preserve. Thus, although Appellees (and the trial court) are generally correct that the Association has authority under the Act, we cannot agree that, as a matter of law, the Act authorizes

---

[12] Section 5302(a)(2) of the Act permits "the association" to "collect assessments for common expenses from unit owners." Section 5302(a)(2) is retroactive. 68 Pa. C.S. § 5102(b).

15

the particular assessments in dispute here (*i.e.*, those for recreational facilities). Summary judgment was, therefore, not supported by the Act alone.

### 3. Obligation Under Common Law

We next consider whether, under common law, the Association may collect mandatory recreation area assessments from Owner. The first common law case the parties cite and discuss is *Meadow Run & Mountain Lake Park Association v. Berkel*, 598 A.2d 1024, 1026 (Pa. Super. 1991), *appeal denied*, 610 A.2d 46 (Pa. 1992), which was decided before the Act was effective. In *Meadow Run*, the owner's deed granted the right to use the community's roads, lakes, and other common elements. The deed also contained the following language:

> In the event of the formation or incorporation of an association of the lot owners on above[-]mentioned plot of Mountain and Meadow Run Lakes, the occupants of the above[-]described premises *shall be bound* by such rules and regulations concerning the use of Mountain and Meadow Run Lakes as to boating, bathing, ice skating and fishing, as may be duly formulated and adopted by such association or incorporation.

*Meadow Run*, 598 A.2d at 1026 (emphasis added). The Superior Court held that the owner was obligated under common law to pay the assessments for the roads, lakes, and other common elements to the association, because: (1) the owner enjoyed, pursuant to the deed, the right to use and benefit from those areas; and (2) the deed informed the owner that, in the future, he would *necessarily* become subject to the association's rules and regulations. *Id.* at 1026-27.

In *Rybarchyk*, the owner's deed granted the right to access a lake in the community. Following the community's creation, some owners voluntarily formed an association, which constructed a clubhouse using voluntary donations and eventually purchased the lake from a third-party owner. Much later, the association

16

attempted to impose mandatory assessments on all unit owners in the community. After concluding that the Act did not apply, we examined whether the association could collect assessments under common law. We distinguished the case from *Meadow Run* by noting that, although Rybarchyk's deed granted the right to use the lake, it did not allow use of other association amenities (such as the clubhouse, beach, pavilion, and boat launches), which had, at times, been restricted to use by association members only. *Rybarchyk*, 49 A.3d at 36-37. We also observed that, unlike in *Meadow Run*, Rybarchyk's deed contained no notice that an association might be formed and impose binding regulations in the future. *Id.*

Here, because the meaning of the deed covenants remains unclear, it is not clear whether Owner's chain of title gives sufficient notice and use rights to bind Owner to pay recreational assessments (as in *Meadow Run*) or whether Owner's payment obligation is based only on his voluntary membership (as in *Rybarchyk*). Accordingly, the trial court erred in concluding that Owner's "right to use the . . . common areas in the community" compels him to "contribute to expenses" for those areas. (R.R. at 458a.) As we have discussed, there are genuine factual questions concerning whether the deed covenants impose such a requirement, and the trial court erred in granting summary judgment on that basis.

## B. Voluntary Membership in Association

Even if Owner's chain of title does not require him to pay assessments for the recreational facilities, he could have such an obligation through voluntary membership in the Association. *See Huddleson v. Lake Watawga Prop. Owners Ass'n*, 76 A.3d 68, 73 (Pa. Cmwlth. 2013) ("[N]othing . . . gives [an association] the right to bind *non[]members* or make membership mandatory absent a shared obligation."), *appeal denied*, 84 A.3d 1065 (Pa. 2014). If Appellees could establish

17

that, as a matter of law, Owner voluntarily joined and remained a member of the Association, then the trial court's error in granting summary judgment based on the deed covenants and the Act would be harmless. Accordingly, we now consider whether summary judgment was warranted on the issue of voluntary membership.

Owner argues that there are genuine issues of material fact regarding (1) whether he ever joined the Association, and (2) if he did, whether the termination letter effectively terminated his membership. In response, Appellees argue that, under the doctrine of equitable estoppel, Owner's undisputed actions show he was a member of the Association. Appellees also emphasize that Owner "did not engage in any discovery . . . relative to . . . whether he was or was not a member," and they argue that Owner's response to Appellees' summary judgment motion failed to identify evidence showing a genuine issue of material fact as to voluntary membership. (Br. of Appellees at 11 n.1.)

Appellees are correct that a nonmoving party may not remain silent at summary judgment but must, instead, identify "one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion." Pa. R.C.P. No. 1035.3(a)(1). Appellees' summary judgment motion and supporting brief before the trial court relied on three items in the record—Owner's deposition, the termination letter (which Appellees attached to the motion), and the testimonial affidavit of the Association's property manager. In the motion, Appellees argued that Owner should be estopped from denying his membership in the Association based on (1) admissions in his deposition that he paid assessments, attended Association meetings, and used the lake for fishing and boating; and (2) his statement in the termination letter that he was "terminating *[his] membership* with the [Association]," (R.R. at 295a (emphasis added)), and his failure to assert

nonmembership in the termination letter. In his response and brief opposing summary judgment, Owner argued that these facts are not sufficient to show his membership in the Association. He specifically argued that his fishing and boating on the lake do not reflect membership in the Association but, instead, reflect his understanding that, pursuant to covenant 20, he enjoys easement rights to access the lake from his lakefront property regardless of his membership in the Association.[13] Owner did not specifically identify other disputed facts.

Although Owner's response to the summary judgment motion is not comprehensive, it was timely filed and it articulates at least one genuine dispute about the implication of Owner's admitted use of the lake. Even where factual events themselves are undisputed, summary judgment is inappropriate where there is a genuine dispute about the inferences to be drawn from the facts. *See Laich v. Bracey*, 776 A.2d 1022, 1024 (Pa. Cmwlth. 2001) (requiring that, on summary judgment, "the record *and any inferences therefrom*" must be viewed in the nonmoving party's favor (emphasis added)). Here, although Owner admits his use of the lake, he disputes the inference that his use was based on his acquiescence in membership in the Association. He also provided a plausible alternative inference (that he used the lake pursuant to easement rights). The doubt created by this dispute—squarely addressed in Owner's response to the summary judgment motion—must be resolved in Owner's favor and against Appellees.[14] *Id.*

---

[13] The issue of whether nonmember owners of lakefront property enjoy legal rights to *use* the lake, beyond an easement right for ingress and egress "*to*" (and from) the lake, as provided in covenant 20, is not before this Court. Nothing in this opinion should be construed as addressing Owner's argument that he enjoys such rights.

[14] Contrary to what Appellees appear to suggest, Pennsylvania Rule of Civil Procedure 1035.3 does not require a nonmoving party to offer its own evidence in response to a summary judgment motion. It simply requires that it *identify* evidence in the record that supports

We note several other facts on which Appellees rely that deserve interpretation in Owner's favor on summary judgment. Appellees construe Owner's past payment of assessments as evidence of Owner's voluntary membership in the Association. Owner explained in his deposition testimony, however, that he paid the assessments as a matter of course without understanding their basis. He also explained that he asked for a separate accounting of membership fees (as opposed to, *inter alia*, road maintenance costs), and that he ceased payment when the Association refused to provide one. Owner's admission of liability for road and sewer maintenance costs plausibly explains his prior payments to the Association. This also might explain why, as Appellees emphasize, Owner attended at least two meetings of the Association. In the only detailed testimony he gave about a meeting he attended (but at which he did not vote and was not allowed to speak), Owner stated that he sought to discuss sewer issues with which he would be concerned regardless of membership.

It is the role of a factfinder "to resolve . . . conflicting inferences that may be drawn from the facts." *Thompson v. Nason Hosp.*, 535 A.2d 1177, 1178-79 (Pa. Super. 1988), *aff'd*, 591 A.2d 703 (Pa. 1991). Here, the facts support competing inferences, and it is likely that further discovery will assist a factfinder in determining which inferences are credible. Additionally, under Pennsylvania's well-established *Nanty-Glo* rule,[15] summary judgment cannot be supported by

its claim to a genuine issue of material fact. Here, Owner filed such a response. Moreover, we note that even if Owner had filed no response to the motion, that failure would permit, but would not require, entry of summary judgment. Pa. R.C.P. No. 1035.3(d) ("Summary judgment *may* be entered against a party who does not respond." (emphasis added)); *Payton v. Pa. Sling Co.*, 710 A.2d 1221, 1224 (Pa. Super. 1998) ("[A] trial court may, at its discretion, enter judgment against a party that fails to respond to a summary judgment motion.").

[15] *See Penn Ctr. House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989) (discussing *Nanty-Glo v. Am. Sur. Co.*, 163 A. 523 (Pa. 1932)).

testimonial evidence (*i.e.*, depositions and affidavits) alone unless the testimony is an admission by the nonmoving party that "*conclusively* establish[es] a material fact and [is] not . . . subject to rebuttal." *DeArmitt v. N.Y. Life Ins. Co.*, 73 A.3d 578, 595 (Pa. Super. 2013) (emphasis added). Owner's testimony, although an admission, is inconclusive because it is open to competing interpretations. Owner has essentially articulated how he would rebut Appellees' interpretation of his testimony before a factfinder. For this reason, the record (viewed in the light most favorable to Owner) supports Owner's assertion that a genuine issue of fact exists regarding whether he was ever a member of the Association.[16] Summary judgment was, therefore, not appropriate. *See Toy*, 928 A.2d at 194-95.[17]

## IV. CONCLUSION

For the foregoing reasons, the trial court erred in granting summary judgment in favor of Appellees. Accordingly, we will reverse the trial court's orders and remand this matter to the trial court.

———————————————————
P. KEVIN BROBSON, Judge

---

[16] We also note that there may be a genuine dispute regarding Owner's purported termination of membership. Owner testified that, at some point following his attempted termination, the Association's grievance committee acknowledged that Owner was not a member of the Association. (*See* S.R.R. at 39b-41b.) Given that Appellees' argument for Owner's membership sounds in equitable estoppel, a dispute about whether the Association accepted Owner's attempted termination or otherwise confirmed that he was not a member is material.

[17] Given this determination, we do not consider Owner's other arguments on appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stillwater Lakes Civic Association, Inc. :
and Stillwater Sewer Corporation :
                                 :
         v.                   :   No. 998 C.D. 2018
                                   :
George Kuzni,                  :
                  Appellant      :

## **O R D E R**

AND NOW, this 5th day of February 2020, the orders of the Court of Common Pleas of Monroe County (trial court) dated March 13, 2017, and June 6, 2018, respectively, are REVERSED, and this matter is REMANDED to the trial court for proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

 

 

                                       _____
                                       P. KEVIN BROBSON, Judge